[Crim. No. 1674.   Fourth Dist.   Jan. 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. LINDA ROTAN
BARTHEL, Defendant and Appellant.

Bruce Weathers for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, Gilbert F. Nelson and Mitchell S. Shapiro, Deputy Attorneys General, for Plaintiff and Respondent.

BROWN (Gerald), J.—The defendant Linda R. Barthel was found guilty of violating three subdivisions of Penal Code, section 337a: subdivision 1, engaging in bookmaking, subdivision 2, occupying a room with betting paraphernalia, and subdivision 4, recording or registering bets. She admitted two prior felony convictions. The sentences for each violation were ordered to run consecutively and consecutively with any prior incompleted sentences.

On October 4, 1963, Officer Guerin presented an affidavit in municipal court upon which a warrant was issued authorizing a search of the persons and premises of Mathew and Linda Barthel at 3609 Curlew Street, San Diego.

That afternoon Officers Guerin, Murray, Schilder and Donnelly arrived at the Curlew Street address. Parking slightly past the house Guerin and Murray hurried to the front door; Schilder and Donnelly went to the rear. Murray knocked on the front door which was locked, and announced that he was a police officer. Guerin went to the rear while Murray continued to knock and announce that he was a police officer with a search warrant. Within a few moments he heard Guerin make a similar announcement, followed by activity inside which sounded like someone running.

Guerin went to the rear because he believed that it would be easier to enter there. When he arrived he found Schilder and Donnelly waiting outside a fence separating the patio from the house. The gate was stuck so Schilder vaulted the fence and headed for the bedroom door as Guerin loundly announced they were police with a search warrant. In a few moments Guerin followed and went to the kitchen door. Meanwhile Schilder had knocked at the bedroom door and announced that he was an officer with a search warrant, and hearing hurried movements inside he thrust his hand through

the locked screen door and entered. The defendant was standing in the living room. From this position she could have observed the activities of the officers. She was arrested and the premises were searched.

The admissibility of the evidence is questioned, not its sufficiency. Several arguments are presented for reversal of the convictions on the ground that the evidence was illegally obtained. The first is that the search warrant was not issued on a proper showing of probable cause.

The Fourth Amendment of the United States Constitution, which has been incorporated into the Fourteenth Amendment (*Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933]), provides in part that: ". . . no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." ▮ Federal standards must be applied by the state courts in determining the sufficiency of the affidavit upon which the search warrant is issued. (*Aguilar* v. *Texas*, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723]; *Giordenello* v. *United States*, 357 U.S. 480 [78 S.Ct. 1245, 2 L.Ed.2d 1503].)

The defendant cites the *Aguilar* and *Giordenello* cases as controlling this case. In *Aguilar* the affidavit upon which a local justice of the peace issued a search warrant, recited: " 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates, and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.' " (378 U.S. at p. 109.)

In holding the evidence obtained pursuant to the warrant was inadmissible the United States Supreme Court said: ". . . 'the mere conclusion' that petitioner possessed narcotics was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge' for all that appears the source here merely suspected, believed or concluded that there were narcotics in the petitioner's possession." (378 U.S. at pp. 113-114.)

It was recognized in *Aguilar* that where the magistrate is informed of some underlying circumstance from which the informant concluded a crime was being committed, and

some underlying circumstance from which the officer concluded that the informant's information was reliable, that the affidavit would be sufficient, even though based upon hearsay. It was also carefully pointed out in *Aguilar* that the only information in the record to support a determination by the magistrate of probable cause was the affidavit.

In *Giordenello* the supporting affidavit of a federal narcotics agent declared: ". . . That on or about January 26, 1956, at Houston, Texas . . . Veto Giordenello did receive, conceal, etc., narcotic drugs, to-wit: heroin hydrocholoride with knowledge of unlawful importation; in violation of Section 174, Title 21, United States Code.

"And the complainant further states that he believes that ———————— are material witnesses in relation to this charge." (357 U.S. at p. 481.)

In holding the evidence obtained pursuant to this warrant inadmissible it was said: "[T]he complaint in this case . . . does not pass muster because it does not provide any basis for the . . . determination . . . that probable cause existed. The complaint contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein; it does not indicate any sources for the complainant's belief; and does not set forth any other sufficient basis upon which a finding of probable cause could be made." (357 U.S. at p. 486.)

In the case before us the supporting affidavit by Officer Guerin alleged that he received information from an undisclosed informant that horse racing bets were being accepted by a woman over the telephone number CY8-6056; this informant on six occasions had supplied information which had led to the conviction of 14 persons for bookmaking and it was in the public's interest not to disclose the informant's identity; it was also alleged that an independent investigation revealed that the telephone and utilities were listed to M. R. Barthel, 3609 Curlew Street, who had a record of bookmaking convictions.

Thus, this affidavit is distinguishable from the affidavits condemned by the United States Supreme Court in the *Aguilar* and *Giordenello* cases. Here the informant told the officer that bets were being received by a woman over a specific telephone number. This implies personal knowledge of the informant which when coupled with the obvious reliability of the informant, and the information produced by the independent investigation, leads to the conclusion that

there was compliance with constitutional standards. (See *People* v. *Keener*, 55 Cal.2d 714, 721 [12 Cal.Rptr. 859, 361 P.2d 589]; cf., *Jones* v. *United States*, 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697, 78 A.L.R.2d 233].)

■ Next it is argued that the description in the affidavit of the property to be seized and the place to be searched was too general to meet constitutional and statutory standards which require that the oath or affirmation supporting the issuance of a search warrant must name or describe the person, property and place to be searched with reasonable particularity. (U.S. Const., Amend. XIV; Cal. Const., art. I, § 19; Pen. Code, §§ 1525, 1529.) The test is whether the warrant places a meaningful restriction on the objects to be seized (*Aday* v. *Superior Court*, 55 Cal.2d 789, 796 [13 Cal.Rptr. 415, 362 P.2d 47]). The affidavit and the warrant in this case named the defendant and her premises at 3609 Curlew Street and requested recovery of: ". . . .papers, books, records, pencils, pens, racing information, publications of all types, bet registrations, radio, telephone, clock and all other bookmaking property and paraphernalia, used or capable of being used for the purpose of recording or registering bets upon horse races; . . ."

The evidence obtained consisted of envelopes, paper, examples of handwriting, a sportsman's guide, two telephones, a radio, a clock, an adding machine and pages from a newspaper. The warrant here fairly restricts, and the objects actually seized were the instrumentalities used in the commission of the crimes. In view of this we cannot say that the warrant authorized an exploratory search (cf. *United States* v. *Clancy*, 276 F.2d 617).

■ The third attack on the admissibility of the evidence is that there was noncompliance with Penal Code, section 1531, which authorizes forcible entry if the officer executing the search warrant is refused admittance after notice of his authority and purpose. In this connection we are required to assume, in the light most favorable to the judgment, the existence of every fact including all inferences which the trial court could have reasonably deduced from the evidence. (*People* v. *Deysher*, 2 Cal.2d 141, 148 [40 P.2d 259].) Inconsistencies in the testimony of the entering officers do not require its rejection (*People* v. *Wade*, 53 Cal.2d 322, 329 [1 Cal.Rptr. 683, 348 P.2d 116]). ■ Applying these rules we conclude Officer Murray made a proper announcement and heard hurried activity on the inside before any of the officers

forcibly entered the premises. Additionally, Officer Schilder properly announced himself at the rear door and also heard hurried activity inside before entering. Evidence used in bookmaking violations may be readily destroyed (*People* v. *Russell*, 223 Cal.App.2d 733, 737 [36 Cal.Rptr. 27]). These circumstances show sufficient compliance with Section 1531. (Cf. *People* v. *Maddox*, 46 Cal.2d 301, 306 [294 P.2d 6]; *People* v. *Villanueva*, 220 Cal.App.2d 443, 447-449 [33 Cal. Rptr. 811].)

Finally the defendant argues that the objects taken were not subject to seizure and thus violated the defendant's right of privacy and privilege against self-incrimination under the Fourteenth Amendment of the United States Constitution. (*Mapp* v. *Ohio*, 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933]; *Malloy* v. *Hogan*, 378 U.S. 1 [84 S.Ct. 1489, 12 L.Ed.2d 653].) *Gouled* v. *United States*, 255 U.S. 298 [41 S.Ct. 261, 65 L.Ed. 647] and *United States* v. *Lefkowitz*, 285 U.S. 452 [52 S.Ct. 420, 76 L.Ed. 877, 82 A.L.R. 775] are cited for the proposition that the records, letters, papers and the other evidence, which is of an innocuous and utilitarian nature, cannot be the object of seizure under a search warrant.

The rule stated in *Gouled* is that objects of only evidentiary value may not be seized, and when they are they may be suppressed. A clear statement of the test appears in *Harris* v. *United States*, 331 U.S. 145, 154 [64 S.Ct. 1098, 91 L.Ed. 1399], "This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized . . ., and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed. . . ."

Applying this test here involves a determination of whether the objects seized were utilized in perpetrating the crimes for which the defendant was arrested and convicted. We conclude that they were or could have been so used (*United States* v. *Clancy*, 276 F.2d 617; *United States* v. *Joseph*, 174 F.Supp. 539) and therefore they were properly subject to seizure under constitutional standards (cf. *Abel* v. *United States*, 362 U.S. 217 [80 S.Ct. 683, 4 L.Ed.2d 668]; *United States* v. *Boyette*, 299 F.2d 92).

During the trial the defendant took the stand for the limited purpose of attacking the evidence relating to her knowledge of the officers' presence before they forcibly

834

entered. On direct examination she testified in substance that she heard unintelligible external noises but she was not aware that the police were demanding admittance before their immediate entry. On cross-examination she was asked if she had hidden some objects under a mattress before the officers came into the house. An objection that the question exceeded the scope of the direct examination was overruled. The defendant argues that this was prejudicial error.

Penal Code, section 1323 provides in part that: "A defendant . . . if he offers himself as a witness, . . . may be cross-examined . . . as to all matters about which he was examined in chief."

When a defendant testifies to matters inconsistent with the evidence of the prosecution he cannot limit the cross-examination to the precise facts to which he testifies (*People* v. *Teshara*, 141 Cal. 633, 638 [75 P. 338]). He can "be cross-examined with respect to facts or denials necessarily implied from the testimony in chief." (*People* v. *Pike*, 58 Cal.2d 70, 90 [22 Cal.Rptr. 664, 372 P.2d 656].) The question asked by the People tested the defendant's knowledge of the officers' presence, and was proper.

After this ruling the defendant's counsel advised her not to answer the question on the ground of self-incrimination. The People's motion to strike her testimony was granted and the defendant was told to step down.

Where a witness refuses to be cross-examined the direct testimony may be stricken. (*People* v. *Abner*, 209 Cal.App.2d 484, 489 [25 Cal.Rptr. 882].) The defendant argues that this rule does not apply because she did not expressly refuse to testify. This argument was not presented to the trial judge and the record shows that the defendant's counsel directed her to step down. Under the circumstances this objection comes too late.

The defendant was convicted and sentenced for three separate offenses under Penal Code, section 337a. The sentences were ordered to run consecutively to each other and consecutively with any prior incompleted sentences.

It is contended that the judgment ordering consecutive sentences was error because of Penal Code, section 654 which provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one. . . ."

Citing *Neal* v. *State of California*, 55 Cal.2d 11 [9 Cal.

Rptr. 607, 357 P.2d 839] and *People* v. *McFarland,* 58 Cal.2d 748 [26 Cal.Rptr. 473, 376 P.2d 449], the defendant argues that the three counts in violation of Penal Code, section 337a, constitute component parts of an indivisible transaction, and that she may only be punished for the most serious offense.

Under section 337a each subdivision is punishable identically; therefore the sole question is whether the defendant can be punished for only one of the convictions.

Each subdivision of Penal Code, section 337a constitutes a separate offense (*People* v. *Plath,* 166 Cal. 227 [135 P. 954]; *People* v. *Cahan,* 126 Cal.App.2d 785 [273 P.2d 64]; *People* v. *Cuda,* 178 Cal.App.2d 397 [3 Cal.Rptr. 86]). A single or series of acts may constitute a violation of all the subdivisions which may amount to separate offenses (*People* v. *Allen,* 115 Cal.App.2d 745 [252 P.2d 968]). *People* v. *Hopwood,* 164 Cal.App.2d 391 [330 P.2d 447], holds that multiple convictions under different subdivisions of section 337a are divisible transactions not encompassed within the prohibition of section 654. The *Neal* and *McFarland* decisions now dictate a different result.

In *Neal* the defendant was convicted of arson and two counts of attempted murder arising out of his act of throwing and igniting gasoline into the bedroom of the victims. The sentences for attempted murder were ordered to run consecutively. In applying section 654 the Supreme Court said: " 'If a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction, or whether a single act has been so committed that more than one statute has been violated.

" 'If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. It is the singleness of the act and not of the offense that is determinative.'

" .    .    .    .    .    .    .    .    .    .    .

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (55 Cal.2d at p. 19.)

Thus, it was held in *Neal* that the arson was the means and was incidental to the primary objective of murder, and that the defendant could not be punished for both.

In *McFarland* the defendant was convicted (among other things) of burglary and grand theft for stealing a compressor from a hospital. Applying the principle decided in *Neal* the Supreme Court reversed the consecutive sentence of grand theft, holding that defendant could be punished only for burglary.

The ultimate question in this case is whether the act or course of conduct of the defendant was committed with an intent and objective from which it can be concluded that each offense was a divisible transaction.

The intent and objective of the defendant was to engage in bookmaking. Occupying the place containing the paraphernalia and registering bets were incidental and the means to her primary objective, which was obtaining money by placing bets. We hold therefore, that the trial court erred in not applying section 654. (cf. *People* v. *Quinn*, 61 Cal.2d 551 [39 Cal.Rptr. 393, 393 P.2d 705]; *People* v. *Gay*, 230 Cal. App.2d 102 [40 Cal.Rptr. 778]; *People* v. *Young*, 224 Cal. App.2d 420 [36 Cal.Rptr. 672].)

The defendant was charged with and admitted two prior felony convictions. The information alleges that she was convicted of violating Penal Code, section 337a, subdivisions 1 and 4 on July 25, 1961, in the Superior Court of San Diego County. It is additionally argued that Penal Code, section 654 should be applied to the prior convictions necessitating a redetermination of the defendant's eligibility for probation.

In effect, this agument is an attempted collateral attack on the 1961 judgment. The record before us indicates only that the defendant was convicted of violating two subdivisions of Penal Code, section 337a in July 1961. From this meager recital we cannot determine whether the intent and objective of the defendant in violating those subsections constituted an indivisible transaction.

The judgment is reversed insofar as it imposes sentences for three violations of the subdivisions of Penal Code, section 337a, with instructions to sentence in a manner consistent with this opinion; in all other respects the judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied February 5, 1965, and appellant's petition for a hearing by the Supreme Court was denied March 17, 1965. Peters, J., was of the opinion that the petition should be granted.