JEFFERSON, J.
 

 This is an appeal by Peter Alvarado from the judgment entered upon his conviction by a jury of two counts of robbery (Pen. Code, § 211). He was tried together with one Robert Frazer who was also convicted of two counts of robbery but who does not appeal.
 

 Both defendants were charged in a' single information which alleged three counts: Count one charged Frazer alone, alleging that, on August 18, 1964, he robbed P. Gregorio of $493. Count two charged Alvarado alone. It alleged that he robbed William Minyard, Jr., of $141.23 on August 24, 1964. In count three both defendants were jointly charged with robbing David Burks of $90 on September 9,1964.
 

 
 *283
 
 Before the jury was impaneled, Alvarado moved to have count one (which as indicated charged only his codefendant) severed and tried separately. In support of the motion, Alvarado’s counsel argued that, because of the similarity of the crimes, the jury might be prejudiced against his client if it found Frazer was guilty of count one. The court denied the motion. Alvarado assigns this as error. The evidence subsequently introduced at the trial showed, as defense counsel had pointed out, a pattern of robberies each strikingly similar.
 

 With respect to count one, on August 18, 1964, at about 8:45 p.m., Frazer entered a grocery store located at 5658 Clara' Street, Bell Gardens. He picked up a few items and approached the checkstand. He handed Mr. Gregorio, the proprietor, a one dollar bill in payment for the merchandise. When Gregorio turned back around he saw that Frazer had pulled out a short chrome-plated gun. Frazer ordered him to hand over all the bills. Gregorio complied and Frazer stuffed the money in his pockets. He ordered Gregorio to walk to the back of the store and then left.
 

 As to count two, the evidence showed that, on August 24, 1964, William Minyard was working at a checkstand in Von’s Market located at Paramount and Florence in Downey (about two miles from Gregorio’s grocery store). At about 8:15 p.m. that evening, Alvarado approached his checkstand carrying a carton of cigarettes. After he “rang them up” and stated the price, Alvarado pulled out a white-handled gun, told Minyard it was “a holdup” and ordered him to put the money in a paper sack which he produced. Minyard did as directed and Alvarado then ordered him to walk to the back of the store. He did not see Alvarado leave. Min-yard indicated that there was “somebody” with Alvarado but he did not get a good look at the person and was not able to make any identification.
 

 The victim of the third robbery (alleged against both defendants in count three), was David Burks. On the evening of September 9, 1964, he was employed at the Jolly Market on Florence and Emil, in Bell Gardens. At about. 8:20 p.m., Frazer walked up to the checkstand carrying a quart of milk and some lunch meat. He handed Burks a one dollar bill in payment and Burks gave him the change. It was then that Frazer displayed a .32 caliber nickel-plated revolver. He told Burks to put the rest of the money from the cash register in the bag in which the milk and lunch meat
 
 *284
 
 had been placed. Burks followed Frazer’s orders and the latter then left the store.
 

 Paul Silva was standing outside the market. Through the front window he saw the robbery take place. When Burks put the money in the paper bag, Frazer left the store and then ran to an automobile parked across the street. Alvarado was the driver of this ear. Brady Adams also saw Frazer come out of the store and get into the car driven by Alvarado. Before Frazer came out, the engine of the car was running.
 

 A .32 caliber chrome-plated revolver with a mother-of-pearl handle was introduced in evidence as People’s Exhibit 1. Each of the three robbery victims indicated that the weapon was similar to the one used to rob them. The revolver, together with .32 caliber ammunition, were found on September 10,1964, in a search of the residence of Frazer.
 

 In a statement to the police after his arrest, and after being advised of his constitutional rights, Frazer admitted having committed the robberies charged against him in counts one and three. He further stated that he had used the revolver found in his residence. His statement in no way implicated Alvarado.
 

 Alvarado testified, denying any involvement in the robberies charged against him. His story was that he was in Ensenada on August 24, 1964, the date of the Von’s Market robbery. Frazer was with him at the time. With respect to the Jolly Market robbery, he admitted waiting in the car while Frazer went into the market. He did not know that Frazer was going to commit a robbery. Frazer told him later that he had committed the crime.
 

 Frazer testified in behalf of Alvarado, supporting the latter’s alibi for the Von’s Market robbery. He further testified that Alvarado knew nothing about the Jolly Market robbery which he alone had committed.
 

 A defendant is not, as a matter of right, entitled to a separate trial.
 
 (People
 
 v.
 
 Santo,
 
 43 Cal.2d 319, 332 [273 P.2d 249]; Pen. Code, § 1098.) Where there is an underlying set of common facts or common evidence, the consolidation of separate charges against multiple defendants charged jointly with at least one offense, is proper.
 
 (People
 
 v.
 
 Chapman,
 
 52 Cal.2d 95, 97 [338 P.2d 428] ;
 
 People
 
 v.
 
 Andrews,
 
 165 Cal.App.2d 626, 635-636 [332 P.2d 408].) The oft-used expression in such a case is that the charges have “a common element of substantial importance in their commission.”
 
 (People
 
 v.
 
 Spates,
 
 53 Cal.2d 33, 36 [346 P.2d
 
 *285
 
 5];
 
 People
 
 v.
 
 Chambers,
 
 231 Cal.App.2d 23, 32 [41 Cal.Rptr. 551].)
 

 A motion for severance must be decided upon the showing made at the time the motion is made.
 
 (People
 
 v.
 
 Santo, supra,
 
 43 Cal.2d 319, 332.) The defendant has the burden of demonstrating, then and there, that the charges were not properly consolidated and therefore should be severed.
 
 (People
 
 v.
 
 Andrews, supra,
 
 165 Cal.App.2d 626, 635.) When Alvarado made his motion for severance, he made absolutely no showing that the crimes were unrelated or unconnected, as was the case in the
 
 People
 
 v.
 
 Biehler,
 
 198 Cal.App.2d 290 [17 Cal.Rptr. 862], upon which he relied. Quite to the contrary, as indicated above, defendant pointed out that the offenses were indeed similar. (That this observation was correct, was later borne out by the evidence.)
 

 Furthermore, even if we were in a position to conclude that the trial court had erroneously denied the motion for severance, we could not reverse Alvarado’s conviction on such ground. To do so, we would have to be able to say a reasonable probability existed that he would have obtained a more favorable result had the severance been granted.
 
 (People
 
 v.
 
 Massie,
 
 66 Cal.2d 899, 922-923 [59 Cal.Rptr. 733, 428 P.2d 869].) As our Supreme Court pointed out in
 
 Massie
 
 (at p. 923), “. . . the Legislature has decreed joint trials to be the rule and separate trials the exception. The question of the erroneous denial of a severance does not rise to jurisdictional magnitude, nor is the right to a separate trial so fundamental that its denial must occasion automatic reversal.”
 

 While Frazer made an extrajudicial confession of his guilt as to count one, that confession did not implicate Alvarado. The case against Alvarado rested on the positive identification made by the victim of the Von’s Market robbery, pointing him out as the man who robbed him; and on the positive identification of two bystanders at the Jolly Market robbery, that he was the driver of the get away ear used by Frazer.
 

 Alvarado raises several contentions concerning the search which produced the revolver. Shortly after defendants were taken into custody, James Wagner, an investigating officer on the case, had obtained a warrant to search the residences of defendants for the gun or guns used in the robberies. He found a .32 caliber revolver (People’s Exhibit 1), and five rounds of ammunition in a closet of Frazer’s apartment.
 

 
 *286
 
 Alvarado challenges the refusal of both the issuing magistrate (who was the same judge who presided at the preliminary examination) and the trial court to grant his motion to quash the warrant. Defendant argues that the affidavit supporting the warrant does not indicate probable cause for issuance of the warrant. Further, it is urged that the affidavit contained an insufficient description of the object of the search.
 

 The affidavit describes in detail the events leading up to the arrests of Alvarado and Frazer, and explains why the warrant to search was requested and what it sought to uncover.
 

 Summarized, the affidavit recites that the Jolly Market in Bell Gardens was held up on September 9, 1964, at 8 :15 p.m., by an individual with what appeared to be a .32 caliber revolver; the robbery netted $90.84; a customer at the market saw the robber enter a waiting vehicle driven by another individual; descriptions of these persons were given to the police; at 9 p.m. the same night, Alvarado and Frazer were stopped by an officer who observed that they matched the descriptions given; they were driving a 1959 Ford with license No. BHR 166; the same car was observed by another officer between 8 :15 and 9 p.m. at a residence at 5727 Clara Street, Bell Gardens; the car contained a toy gun and shoulder type black leather holster for a standard revolver; after they were apprehended, a clerk at the Jolly Market identified Frazer as the hold up man, and a customer identified Alvarado as the driver of the 1959 Ford used as the get away ear; subsequent investigation disclosed that Alvarado lived at 5727 Clara Street, Bell Gardens, and that Frazer lived in apartment No. 19 at 6021 Muller, Bell Gardens; both residences were less than a mile from the Jolly Market; when arrested Alvarado and Frazer had a total of $94.24 in cash on their persons; Frazer had six 50-eent pieces and forty 25-cent pieces included in this amount; there was also a bag of pennies in their car.
 

 The affidavit concludes:
 

 “Due to identification of the suspects individually and combination by two witnesses, due also to the amount of money in combination held by each suspect, due to the substantial amount of coin taken in the robbery and held by the suspects, due to empty holster recovered and weapon observed in the robbery, due to the time factors involved and the proximity of the suspects respective residences to the 6600 East Florence robbery address, it is believed that'
 
 *287
 
 one or each of the above named residences 5727 Clara Street Bell Gardens and 6021 Muller Apartment 19, Bell Gardens, contain the missing weapon or weapons carried by the respective suspects in the course of the robbery wherefore affiant requests a search warrant of 5727 Clara Street, Bell Gardens, California, a one-story stucco residence with attached carport and 6021 Muller, Apartment 19, Bell Gardens. California, a two story apartment building, stucco. ’ ’
 

 The affidavit in support of a search warrant must furnish sufficient competent evidence to support the magistrate’s finding of probable cause.
 
 (People
 
 v.
 
 Stout,
 
 66 Cal.2d 184, 193 [57 Cal.Rptr. 152, 424 P.2d 704];
 
 People
 
 v.
 
 Prieto,
 
 191 Cal.App.2d 62, 68 [12 Cal.Rptr. 577].) It must describe with reasonable particularity the place to be searched, and the property to be seized.
 
 (People
 
 v.
 
 Barthel,
 
 231 Cal.App.2d 827, 832 [42 Cal.Rptr. 290].) The test for the latter is “whether the warrant places a meaningful restriction on the objects to be seized.”
 
 (People
 
 v.
 
 Barthel, supra,
 
 at p. 832.) The affidavit in support of the warrant met the above requirements.
 

 The argument is made by defendant that, since the affidavit indicates the officers found a toy gun in the car when he and Frazer were arrested, further search was unreasonable. But the victim described a real gun, a “.32 caliber revolver.” In addition, the officers found a holster for a real gun in the car.
 

 Alvarado also argues that only the search of his residence should have been permitted; that since they were not seen at Frazer’s residence after the robbery, it was unreasonable to expect that the gun would be found at that location. But both residences were in close proximity to the robbery and the affidavit recites facts indicating there was time enough after the robbery for defendants to go to both residences before they were arrested. While the officer could not, on his own, search either place since the arrest was not made at either location, the magistrate was clearly entitled to issue the search warrant authorizing the search of both residences on the basis of the facts stated in the affidavit. Because the search of Frazer’s residence was valid as to him, Alvarado has no ground to object to it.
 

 The judgment is affirmed.
 

 Files, P. J., and Kingsley, J., concurred.