STATE of Missouri, Respondent,

v.

James R. SCHNELLE, Appellant.

No. WD 55650.

Missouri Court of Appeals,
Western District.

Oct. 5, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 23, 1999.

Application for Transfer Denied
Jan. 25, 2000.

Rosemary Percival, Public Defender Office, Kansas City, for appellant.

Philip Koppe, Atty. Gen. Office, Kansas City, for respondent.

HANNA, Judge.

The defendant, James R. Schnelle, was convicted after a jury trial in Clay County Circuit Court of assault in the first degree, § 565.050 [1] (against Christina Lucas), and assault in the second degree, § 565.060 (against Debra Smith). He was also convicted for knowingly burning, § 569.055, and tampering in the first degree, § 569.080.1(2). He was sentenced as a persistent offender under § 558.016.3, to a total term of 50 years imprisonment.[2] This court permitted the defendant to file his appeal out of time.[3]

The defendant and one of the victims, Debra Smith, had been living together in his home for over a year, despite a probation order that required Ms. Smith not to enter the house or be near the defendant. Ms. Smith testified that, during their relationship, the defendant was frequently violent, typically if he had been drinking

---

1. All statutory references are to Missouri Revised Statutes, 1994, unless otherwise indicated.

2. The defendant received consecutive 20-year sentences on the assault charges, and concurrent 10-year sentences for knowingly burning and tampering.

3. This is the defendant's second trial. This court reversed his initial convictions on appeal because the record did not show that he knowingly waived his right to trial counsel. See *State v. Schnelle*, 924 S.W.2d 292 (Mo. App.1996).

whiskey. About midnight on November 22, 1993, Ms. Smith returned to the defendant's house with her friend, Christine Lucas, after being gone for approximately four days. Ms. Smith entered the defendant's house while Ms. Lucas waited in the car.

Ms. Smith awoke the defendant who was sleeping on the couch. His breath smelled of alcohol. An argument ensued in which the defendant screamed at Ms. Smith, broke the kitchen table and struck at her several times before she reached the front door and yelled for help. Ms. Lucas came to the door and attempted to intervene when the defendant threatened to again hit Ms. Smith. The defendant yelled at Ms. Lucas, asking who she was, and then struck her in the left eye with his fist, knocking her unconscious. When she came to, he hit her again and kicked her at least once while she was on the ground. Ms. Lucas then got up and ran to a neighbor's house to call the police.

At this point, the defendant chased Ms. Smith around the front yard, hitting and kicking her. They both fell to the ground, and the defendant grabbed a piece of wood the size of a fireplace log from a neighbor's wood pile and began swinging it at her. He was "just hitting [her] all over," striking "one blow after another." The defendant threatened to kill her.

The defendant went inside and retrieved what appeared to be a sledgehammer. Both women ran and hid across the street to wait for the police. When the defendant came back out, he yelled, "I love you baby, I love you, baby," and proceeded to knock out "virtually every piece of glass that was available to knock out" of Ms. Lucas automobile. He then rolled the car down the driveway into a ditch across the street. He poured liquid into the car and set it on fire. An arson investigator testified that an accelerant, such as gasoline, had been poured into the passenger compartment of the car, and that the fire was of an incendiary nature. Several neighbors witnessed the car burning incident.

After the police arrived, they noticed both women had visible injuries. They were transported by ambulance to the hospital. Ms. Lucas had a swollen, blackened eye, and a laceration above her eye which required four or five stitches. Ms. Smith was treated for multiple bruises and contusions, some of which were located on her head and upper extremities.

The defendant told the police that he got into an argument with Ms. Smith after waking up and realizing who she was and that she was not his current girlfriend. He admitted to striking her, stating that he "kicked the shit out of her." He also admitted to hitting Ms. Lucas. He indicated that his actions were necessary in that he was "protecting his property." As to the car, he stated that he had broken out the windows, and pushed it into the ditch after it caught on fire. He eventually admitted to starting the fire and said, "I'd do it again if they come back."

At trial, Ms. Lucas testified that she did not think that the defendant was trying to kill her or cause her serious physical injury, but that he was trying to protect his property. Ms. Smith testified, however, that she did believe that the defendant was attempting to kill her or to cause her serious physical injury. The defendant also testified, but on cross-examination he refused to answer questions about his prior criminal record. As a result, his entire testimony was stricken from the record.

■ The defendant's first point is directed to his conviction of assault in the first degree as to Ms. Lucas. The defendant claims that the state did not prove, beyond a reasonable doubt, that he was guilty of assault in the first degree because it did not prove that he "attempted to kill or cause serious physical injury." Specifically, he argues that the evidence only demonstrated that he kicked her and struck her twice with his fist. He argues that the only injury she received was a black eye and a cut above the eyebrow, which required several stitches. While the

evidence may have been sufficient for third-degree assault, the defendant argues that it was insufficient to support a first-degree assault conviction. The state responds that the evidence showed that he punched Ms. Lucas in the face so hard that she was rendered unconscious and needed stitches to close the cut above her left eye, "which was nearly swollen shut."

A reviewing court "accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993)(quoting *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989)). "In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Id.* Substantial evidence is that evidence "from which the trier of fact reasonably can find the issue in harmony with the verdict." *State v. Martin*, 852 S.W.2d 844, 849 (Mo.App. 1992). This court cannot assess witness credibility or reliability, nor may it weigh the evidence. *State v. Daleske*, 866 S.W.2d 476, 478 (Mo.App.1993).

In order to be found guilty of first-degree assault, the state must prove that the defendant acted with a culpable mental state—in this case that he "knowingly cause[d] or attempt[ed] to cause serious physical injury to another person." § 565.050.1. A person acts knowingly if, "with respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist or, ... with respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." § 562.016.3.

In support of his claim that the state failed to present substantial evidence that he attempted to cause serious physical injury, the defendant points to Ms. Lucas' testimony that she only remembered being hit once, and did not testify that she was knocked unconscious. Moreover, when asked by defense counsel on cross-examination whether she believed that the defendant was trying to cause her serious physical injury, Ms. Lucas responded: "No, no. In fact, I couldn't say that he even knew who I was, that I was male or female at the time that it happened. Like I say, it appeared he had been asleep, maybe intoxicated." She admitted that she had previously indicated that the defendant was trying to hurt her, but that she now thought that maybe he was trying to defend himself or his property. She indicated that she changed her testimony based on the fact that mutual friends had given her the impression that Ms. Smith might have been at the house to rob the defendant. The state again asked her if the defendant was "trying to do her physical injury." She responded, "Yes, he was trying to seriously injure me, but at the same time I think he was doing it out of trying to protect himself and his property."

Additionally, the defendant claims the fact that he was convicted of *second*-degree assault with regard to the injuries inflicted on Ms. Smith, supports his claim that the state over-charged him regarding his conduct towards Ms. Lucas.[4] Since the evidence was that the defendant was far more aggressive towards Ms. Smith, the defendant claims that this demonstrates the error, as well as the fact that the evidence against him regarding this charge was insufficient for a conviction of assault in the first degree.

In *State v. Burton*, the defendant argued that there was insufficient evidence to support his conviction for assaulting a police officer in the first degree because he

4. He contends that the state mistakenly reversed the degree of felony as to the conduct towards the two different victims.

did not intend to kill or cause serious physical injury to him. 863 S.W.2d 16, 17 (Mo.App.1993). The defendant argued that because he left the deputy without serious injury, he did not intend to cause physical injury to him. *Id.* The court noted that:

> Assault in the first degree, without injury to the victim, requires proof of a very specific intent on the part of the actor to cause serious physical injury. The intent element, however, is generally not susceptible of proof by direct evidence; and may be shown by circumstantial evidence.

*Id.* (citing *State v. Robinson,* 710 S.W.2d 14, 17 (Mo.App.1986)). The evidence presented in the *Burton* case was that the defendant threw the deputy against the wall, hit him in the chest with his head, and apparently rendered him unconscious. 863 S.W.2d at 17. Viewed in the light most favorable to the state, the court found that the evidence was sufficient to warrant the jury's finding of guilt. *Id.* The court said, "We note that it is immaterial that the deputy actually suffered no serious [lasting] physical injury, as long as the State proved that defendant had the intent to cause such injury." *Id.*

Ms. Lucas testified that the defendant unexpectedly hit her in the left eye with such force that it knocked her down and opened a wound requiring four or five stitches. At the hospital, she received a series of x-rays to ensure she had not suffered fractures of her facial bones. Photographs taken several hours after the beating showed the left side of her face badly bruised and her left eye nearly swollen shut. When this evidence is viewed in the light most favorable to the verdict, a reasonable juror could conclude that the defendant attempted to cause serious physical injury to Ms. Lucas. Point denied.

■ In his second point, the defendant contends that the trial court erred in failing to submit his proposed jury instruction of the lesser included offense for assault in the third degree concerning his acts towards Ms. Lucas. The defendant submitted a proposed instruction which the court refused. He contends that the evidence showed that he "recklessly struck" her and this provided a basis for acquittal of assault in the first degree, and was evidence of assault in the third degree. The state counters that the defendant actually caused physical injury and all of the evidence showed intentional, not reckless acts.

■ "For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice or miscarriage of justice. Defendant bears the burden of establishing manifest injustice." *State v. Cline,* 808 S.W.2d 822, 824 (Mo. banc 1991). This determination "must be based on a consideration of the facts and circumstances of each case." *Id.*

■ Generally, "trial courts need not instruct on a lesser included offense unless the evidence provides a basis for a verdict acquitting the defendant of the greater offense and convicting him of the lesser offense." *State v. Garrison,* 975 S.W.2d 460, 461 (Mo.App.1998)(citing *State v. Mease,* 842 S.W.2d 98, 110–11 (Mo. banc 1992)). "A defendant is not entitled to a lesser included offense instruction merely because the jury might disbelieve some of the state's evidence or decline to draw some or all of the permissible inferences." *Garrison,* 975 S.W.2d at 461–62.

■ The difference in the degrees of assault are based on the accused's mental state and the kind of injury. *Garrison,* 975 S.W.2d at 461. Section 565.070 instructs that a conviction of assault in the third degree requires the state to prove that the defendant "attempts to cause or recklessly causes physical injury to another person." *Id.* A mental state of "recklessness" involves less culpability than conduct that is knowing, and is defined by statute as when a defendant "consciously

disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." § 562.016.4.

The defendant claims that several factors support the inference that he recklessly created a grave risk of physical injury to Ms. Lucas. He claims that he was disoriented due to the fact that he was sleeping and perhaps intoxicated, the house was dark, and he may have only kicked "at" her. However, there was no evidence contradicting his testimony that he intentionally hit her in the face. Whether or not he was trying to protect his property, the evidence is unmistakable that his actions were not reckless. The defendant made it clear, in both his statement to the police and his testimony at trial, that he intentionally struck Ms. Lucas.

Although third-degree assault is a lesser included offense of first-degree assault, *Garrison,* 975 S.W.2d at 461, there was no evidence of a reckless or an unintentional or accidental act. *See State v. Isom,* 906 S.W.2d 870, 873 (Mo.App.1995). Consequently, there was no basis to support the submission of a jury instruction on assault in the third degree based on the mental state of recklessness. *See* § 556.046.2; *State v. Adams,* 808 S.W.2d 925, 934–35 (Mo.App.1991)(finding no error in court's refusal to give third-degree assault instruction because the description of the victim's injuries showed they resulted from intentional acts, "not from an isolated instance of recklessness on anyone's part"); *State v. Johnson,* 770 S.W.2d 263, 267 (Mo. App.1989). Point denied.

In his third point, the defendant claims that the trial court plainly erred in striking his trial testimony in its entirety, in that his direct testimony was necessary to refute portions of the state's case and, therefore, he was denied the fundamental right to present his defense.[5] Essentially, the defendant argues that the court erred in striking all of his testimony, including his direct testimony, after he refused to answer a question on cross-examination that he had been convicted of a felony in Kansas. The defendant specifically contends that it was unnecessary for the trial court to strike the entirety of his testimony, when he refused to respond to a question that related solely to credibility, as the trial judge had "much less drastic avenues available to cure the problem."

■ "When a defendant in a criminal case voluntarily takes the stand as a witness in his behalf he waives the protection against self-incrimination ... and subjects himself to the perils of being cross-examined to the extent permitted by law." *State v. Dean,* 400 S.W.2d 413, 416 (Mo.1966)(citing *State v. Swisher,* 364 Mo. 157, 260 S.W.2d 6, 10 (Mo.1953)). *See also State v. Freeman,* 667 S.W.2d 443, 448 (Mo.App.1984)(stating that "a defendant who elects to testify in his own behalf may be contradicted and impeached as any other witness")(citing *State v. Murphy,* 592 S.W.2d 727, 731 (Mo. banc 1979)).

■ "[T]he administration of criminal justice requires the state to call witnesses and requires that the state be able to cross-examine witnesses called by the defense." *State v. Brown,* 549 S.W.2d 336, 341–42 (Mo. banc 1977). The question propounded by the state concerned a prior felony conviction and was proper for the purposes of impeachment. *Freeman,* 667 S.W.2d at 447–48. Thus, the issue is whether the trial court committed plain error when it struck the defendant's *entire* testimony in order to remedy his refusal to

---

**5.** He contends that the court's action violated his right to testify in his own behalf, his right to a fair trial, and his right to due process, as guaranteed by the Fifth, Sixth and Fourteenth Amendments of the U.S. Constitution, and Article 1, § § 10 and 18(a) of the Missouri Constitution.

answer a proper question designed to impeach his credibility.

Our research has not revealed a Missouri case directly on point. The relevant case law addresses the court's remedies where a *state's witness* testified in the case-in-chief, but then refused to answer questions on cross-examination. In *State v. Blair*, the Missouri Supreme Court found that:

> [C]ourts must be acutely aware of a defendant's right to confront and cross-examine prosecution witnesses and to not permit that right to be diminished by recalcitrant witnesses [for the prosecution] who give damaging testimony on direct and then *refuse to answer questions on cross which are closely related to the commission of the crime* because those rights are constitutionally protected.

638 S.W.2d 739, 754 (Mo. banc 1982)(quoting *State v. Brown*, 549 S.W.2d 336, 342–43 (Mo. banc 1977))(emphasis in original). The Supreme Court, quoting the Second Circuit Court's decision in *U.S. v. Cardillo*, found that the remedy for refusal to respond on cross-examination should be analyzed pursuant to three categories:

> The first would be one in which the answer would have been so closely related to the commission of the crime that the entire testimony of the witness should be stricken. The second would be a situation in which the subject matter of the testimony was connected solely with one phase of the case in which event a partial striking might suffice. The third would involve collateral matters or cumulative testimony concerning credibility which would not require a direction to strike and which could be handled (in a jury case) by the judge's charge if questions as to the weight to be ascribed to such testimony arose.

*Blair*, 638 S.W.2d at 754 (quoting *U.S. v. Cardillo*, 316 F.2d 606, 613 (2d Cir.1963)).

Using this analysis, the Court then went on to conclude that the defendant was not denied his right to cross-examine the state's witness, because the question not answered was not closely related to the commission of the defendant's crime in that the witness refused to answer "only a single question relating to whether he might have possessed the gun five years earlier, and all other questions about the gun were answered." *Blair*, 638 S.W.2d at 754. *See also State v. Carlos*, 549 S.W.2d 330, 334 (Mo. banc 1977)(concluding that "the failure of the trial court to, *sua sponte*, strike all or part of [the state witness's] testimony did not unduly curtail the defendant's right to cross-examine or prejudice the defendant in the trial of this case").

In *State v. Sidebottom*, the state's witness' refusal to answer one question regarding a prior drug deal was found to be "purely collateral in nature to impeach [the witnesses'] credibility." 753 S.W.2d 915, 922 (Mo. banc 1988). Since there was "no contention that [the refusal] to answer any questions related directly to the crime for which [the defendant] was charged and matters about which the witness testified on direct examination," the court's failure to strike all the witness' testimony was not erroneous. *Id.*

We have been unable to find any Missouri cases where the *defendant*, as opposed to a state's witness, refuses to respond to proper questions by the prosecutor. In *State v. Brown*, the Missouri Supreme Court reviewed several cases from California in which the *defendant* refused to answer specific questions on cross-examination. 549 S.W.2d 336, 343–44 (Mo. banc 1977)(citing *People v. McGowan*, 80 Cal.App. 293, 251 P. 643 (1926); *People v. Barthel*, 231 Cal.App.2d 827, 42 Cal.Rptr. 290 (1965); *People v. Williams*, 30 Cal.App.3d 502, 106 Cal.Rptr. 324 (1973)).

The *Brown* court discussed *People v. McGowan*, where the prosecutor asked the defendant the name and address of his alibi witness. *Brown*, 549 S.W.2d at 344 (citing *McGowan*, 80 Cal.App. 293, 251 P.

643 (1926)). The trial court struck all of the defendant's testimony, and the court of appeals affirmed noting that the question was proper and that "through no fault of the prosecution, but through the deliberate act of the defendant himself the prosecution was deprived of the opportunity of cross-examining the defendant." *Brown*, 549 S.W.2d at 344 (quoting *McGowan*, 251 P. at 645).

Additionally, the *Brown* court looked at *People v. Barthel*, in which the defendant took the stand for the limited purpose of testifying as to her lack of knowledge as to the police officer's presence before they forcibly entered her bookmaking operation. *Brown*, 549 S.W.2d at 344 (citing *Barthel*, 231 Cal.App.2d 827, 42 Cal.Rptr. 290 (1965)). On cross-examination she was asked if she had hidden some objects before the officers entered. She refused to answer, and the trial court struck her testimony. The appellate court affirmed. *Brown*, 549 S.W.2d at 344.

The *Brown* court distinguished these cases because the *Brown* case involved a nonparty witness, as opposed to the defendant, who had refused to answer proper cross-examination questions. 549 S.W.2d at 345. The *Brown* court ruled:

> The [trial] court does not have the same discretion to strike the testimony of a *non-party defense witness* as it does to strike the testimony of a witness for the prosecution or the testimony of the defendant himself when the witness refuses to answer material questions on cross-examination. This is founded on the constitutional rights of the defendant to confront his accusers, to cross-examine them, and to call witnesses in his own behalf. Those rights do not inure to the prosecution by the constitution— only to the defendant. See Amend. VI, U.S. Const., and Art. I, sec 18(a), Mo. Const.

*Id.* at 346 (emphasis in original). The court then held that the trial court abused its discretion in striking the testimony of the defense witness. *Id.*

Our own search for the law in other jurisdictions reveals few cases in which a defendant refused to respond to cross-examination questions. In the case of *U.S. v. Panza*, the defendant claimed that striking his testimony, after his refusal to answer relevant substantive questions within the scope of his direct testimony, was an abuse of discretion. 612 F.2d 432, 437 (9th Cir. 1979). The defendant argued that the trial court had several less restrictive options to remedy the problem. *Id.*[6] The court indicated that "[a]ccommodating conflicts between the defendant's interest in testifying and the need to insure truth through cross-examination is one of the trial judge's most important functions ... [and the] propriety of a given sanction will vary with the circumstances." *Id.* at 438–39. The court ruled that "[w]here the defendant's refusal touches only collateral matters, striking his testimony may be an abuse of discretion." *Id.* (citing *Cardillo*, 316 F.2d at 613). Since the record showed that the defendant was "expressly warned that [the defendant's] testimony would be stricken if he refused to answer ... [he] was given ample opportunity to answer ... [and the] questions asked by the prosecution were directed at the core of the defense [the defendant] had outlined in his direct testimony" there was not abuse of discretion, under the circumstance, in striking the testimony. *Panza*, 612 F.2d at 439.

In *U.S. v. Montgomery*, the defendant refused to answer questions on cross-examination regarding his drug source. 998 F.2d 1468, 1479 (9th Cir.1993). The trial court determined that the questions went to the essence of the defendant's entrapment defense. After the defendant again refused to answer, the trial court struck

---

**6.** The defendant argued that the court could have permitted the prosecution to comment on the refusal to answer, to permit continued elicitation of the refusal to answer or to instruct the jury to take the refusal into account. *Panza*, 612 F.2d at 437.

his entire testimony. *Id.* The court indicated that determination of the appropriate sanction is left to the discretion of the trial court, but then indicated that "where the defendant's refusal to testify touches only collateral matters, striking his or her testimony may be an abuse of discretion." *Id.* (citing *Panza,* 612 F.2d at 439). A collateral matter is a "matter not reasonably related to or directly affecting a witness's testimony." *Montgomery,* 998 F.2d at 1479. The *Montgomery* court ruled that since the trial court determined that the government could not effectively impeach the defendant's testimony after he refused to answer the question, the issue was not collateral and the trial court's decision to strike his testimony from the record was affirmed. *Montgomery,* 998 F.2d at 1480. *See also People v. Reynolds,* 152 Cal.App.3d 42, 199 Cal.Rptr. 379, 382 (1984)(ruling that the trial court did not abuse its discretion in striking the defendant's testimony after he refused to name the others that tried to smuggle drugs into the jail with him); *People v. Hunter,* 250 Cal.Rptr. 443, 445 (1988)(ruling that the trial court's striking of all the pro se defendant's testimony, when he refused to answer what he believed to be repetitive, irrelevant prosecution questions, was erroneous).

■ Here we have a situation where in which a defendant, testifying on cross-examination, refuses to answer a collateral question concerning a prior felony conviction. The trial court responded by striking the defendant's entire testimony. However, we conclude that we need not decide whether striking the entire testimony constituted error because trial counsel waived any claim of error by agreeing that striking the entire testimony was the proper remedy. In fact, the trial judge specifically asked defense counsel for appropriate action to remedy the matter. Defense counsel agreed that striking the defendant's entire testimony was proper. The following exchange took place:

**COURT:** I propose to say to [the defendant] in the presence of the jury that this is a question that is permissible under our rules and that if he does not answer that question[,] then I should grant the Prosecutor's requested relief by having him step down and testify no further. And I would direct the jury to disregard all of this testimony. *If you see that I should do it some other way or you have any other request of me before I do that, or you suggest some alternative form, I'll listen. Do you see any better way to do it?*

**DEFENSE COUNSEL:** Judge, I understand the rule. I mean the rule is clear that if he refuses to answer questions on cross-examination, that is the relief that is available to the State.

[Emphasis added]. Defense counsel then requested time to discuss the consequences of his refusal to respond with the defendant. Instead, the court directly addressed the defendant, in open court, and informed him that the question was permissible under the rules of evidence, and that if he refused to answer the question, the prosecutor's requested relief—that the jury be instructed to disregard all of the defendant's testimony—would be granted. The defendant responded that he understood, but stated that he still refused to answer.

The state argues that plain error review is not available to a defendant who was specifically given the opportunity to object, but declined to do so. *State v. Stevens,* 949 S.W.2d 257, 258–59 (Mo.App.1997); *State v. Scott,* 858 S.W.2d 282, 285 (Mo. App.1993); *State v. Kezer,* 918 S.W.2d 874, 877 (Mo.App.1996). Since defendant's counsel agreed to the relief requested by the state, he has waived his right to review, especially for plain error, of the remedy he agreed to. *See State v. Hendrix,* 883 S.W.2d 935, 945 (Mo.App.1994)(ruling that "appellant's claim is not preserved for review on appeal because appellant was granted the relief he sought"); *State v. White,* 813 S.W.2d 862, 866 (Mo. banc

1991)(indicating that "[t]he defendant cannot complain about the denial of a mistrial when his counsel plainly told the court that he did not want this relief").

■ Alternatively, the state asserts that even if we review for plain error, the trial court's action did not result in "manifest injustice" since the defendant's testimony on direct was, in substance, identical to his statements to the police, which were already before the jury. Since the arresting police officers testified, during the state's case-in-chief, and the defendant's statement to them was, in essence, the same story, the state contends that the defendant did not suffer manifest injustice from having his direct testimony stricken from the record.

The defendant's stricken testimony was, in summary, that he did intentionally assault the two victims, but that he did so in self-defense. He admitted breaking into Ms. Lucas' car, claiming that he did so only so that the car could not be driven away. He denied setting the car on fire, claiming that he attempted to douse the flames with water. The defendant denied his prior acts of violence towards Ms. Smith, and testified as to various incidences in which she was violent towards him. He also testified as to numerous recent burglaries to his home.

The state argues that the defendant's defense was before the jury. The state claims it was presented in the form of testimony from the police officer who took the defendant's statement, at the time of arrest, which was substantially the same as his defense at trial. There was no manifest injustice. In any event, plain error review was waived by defense counsel's actions. Point denied.

■ Finally, the defendant contends that the trial court plainly erred when it failed to *sua sponte* declare a mistrial during the state's closing arguments. Specifically, he complains that the prosecutor improperly referred to the defendant's "future dangerousness," and that

he improperly personalized his closing argument. The defendant seeks review for plain error, pursuant to Rule 30.20, because his trial attorney failed to object to the remarks at trial or raise it in his motion for new trial.

■ The defendant complains that the prosecutor argued that "he would a whole lot rather try an assault case like this rather than a murder case that's going to come down the road." Assuming, *arguendo*, that the prosecutor may have overstepped the bounds of proper closing argument, which we do not decide, the comments did not rise to the level of plain error requiring *sua sponte* intervention by the trial court. "[A] conviction will be reversed for improper argument only if it is established that the comment of which appellant complains had a decisive effect on the jury's determination. … The burden is on the defendant to prove the decisive significance." *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993)(citing *State v. Stuckey*, 680 S.W.2d 931, 937 (Mo. banc 1984); and *State v. Wren*, 643 S.W.2d 800, 802 (Mo. banc 1983)). The defendant fails to show how the prosecutor's comments had any effect on the assault convictions in light of all the evidence. Reviewing courts rarely grant relief on assertions of error in closing arguments. *See State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994); *State v. Buckner*, 929 S.W.2d 795, 799 (Mo.App. 1996). Point denied.

Judgment affirmed.

EDWIN H. SMITH, P.J., and SPINDEN, J., concur.