[Crim. No. 10395. First Dist., Div. Three. May 17, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES WHEELER, Defendant and Appellant.

## COUNSEL

Robert Seldner, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and Thomas A. Brady, Deputy Attorneys General.

## OPINION

**CALDECOTT, J.**—The appeal is from a judgment entered following trial by jury finding appellant Charles Wheeler guilty on four counts of robbery, four counts of assault, one count of auto theft and one count of possessing an illegal weapon.

Appellant and his codefendant, Ben Reed, entered the supermarket shortly before 5:30 a.m. on May 13, 1970. George Frazier, a clerk in the market, waited on them as they purchased several items. They then left the store. James Allen, a security guard, observed the defendants at this time. A short time later, the two defendants again entered the market. Appellant Wheeler drew a gun on the security guard Allen and announced a holdup. Wheeler directed codefendant Reed to take the gun from Allen. When Frazier could not open the safe, the store manager was called. As money was being placed in a bag, a customer, Bush, approached. All four were ordered to the back of the store and the robbers left.

Frazier and Allen followed the robbers out and saw the robbers enter a Maverick automobile. Upon seeing Frazier and Allen, one of the robbers fired two shots in their direction. Bush drove by in his car and the three chased the robbers. At one point Bush rammed the Maverick, two shots were fired and Allen and Frazier were hit. Another collision rendered both automobiles inoperable.

An Oakland police officer arrived to investigate the accident. One of the robbers overpowered him and took his gun. Both robbers drove off in the police car. The Maverick was owned by the appellant's wife.

The appellant was indicted separately from his codefendant. The defendants were represented by separate counsel. Later the two cases were consolidated for trial over the objection of both defendants. During the first six days of the trial, both the prosecution and the appellant presented their cases. After the appellant rested, the codefendant's attorney delayed his opening statement until the next day for consultation with his client. The next day, in a short opening statement, he indicated that his client would take the stand, admit the details of the robbery, but show that he performed his part only under the fear that the appellant would kill him if he did not. Appellant objected to the admission of this testimony and again made a motion to sever which was denied. Appellant contends that the failure to grant this motion constituted error.

*The Rule of Aranda Does Not Include an In-court Statement*
*Offered by a Codefendant*

■ The basic issue presented by this appeal is whether the rule of *Aranda*[1] should be extended to include an in-court statement offered by a codefendant.

Prior to the enactment of Penal Code section 1098, all defendants had the right to a separate trial. Section 1098 declared a legislative policy in favor of joint trials, and separate trials were then available only when granted by the trial court. (*People* v. *Santo,* 43 Cal.2d 319, 332 [273 P.2d 249]; *People* v. *Alvarado,* 255 Cal.App.2d 285, 288 [62 Cal.Rptr. 891].)

In *People* v. *Aranda, supra,* 63 Cal.2d 518, 530-531, the court stated: "When the prosecution proposes to introduce into evidence an extrajudicial statement of one defendant that implicates a codefendant, the trial court must adopt one of the following procedures: (1) It can permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted[2] without prejudice to the declarant. By effective deletions, we mean not only direct and indirect identifications of codefendants but any statements that could be employed against nondeclarant codefendants once their identity is otherwise established. (2) It can grant a severance of trials if the prosecution insists that it must use the extrajudicial statements and it appears that effective deletions cannot be made. (3) If the prosecution has successfully resisted a motion for sever-

---

[1]*People* v. *Aranda,* 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265].

[2]Effective deletions could not have been made in this case as codefendant's testimony would have been meaningless without identifying the appellant.

ance[3] and thereafter offers an extrajudicial statement implicating a codefendant, the trial court must exclude it if effective deletions are not possible. Similar rules concerning joint trial have been adopted in other jurisdictions and have been found workable. (See, e.g., *State* v. *Castelli,* 92 Conn. 58 [101 A. 476]; *People* v. *Barbaro,* 395 Ill. 264 [69 N.E.2d 692]; *People* v. *Bolton,* 339 Ill. 225 [171 N.E. 152]; *State* v. *Rosen,* 151 Ohio St. 339 [86 N.E.2d 24].)"

*Aranda* points out that the rule is not new. All of the cases from the other jurisdictions involved an extrajudicial statement offered by the prosecution. There is no indication in any of these cases that the rule would be extended to an in-court statement offered by a codefendant. Since the establishment of the rule by Connecticut in 1917 and Illinois in 1933, there have been no cases extending it.

The facts of *Aranda* involve an extrajudicial statement offered by the prosecution, not an in-court statement offered by his codefendant. The question presented here is whether these differences are significant. We believe they are. *Aranda* stressed the unfairness of the prosecution having in its possession an extrajudicial statement prior to trial, resisting severance of the codefendant's case and then using the statement against the nondeclarant codefendant.

In *People* v. *Terry,* 2 Cal.2d 362, 386, footnote 10 [85 Cal.Rptr. 409, 466 P.2d 961], the court again stressed the element of fairness in stating: ". . . it would be unjust to apply this dictum[4] [the rule of *Aranda*] against a prosecutor who resisted a motion for severance made *before* the *Aranda* decision. If he so acts in the face of *Aranda,* however, it would be fair to make him proceed with the trial without the confessions."

Apparently the court in *Aranda* and *Terry* is not saying that the use of the statement against the nondeclarant codefendant is bad in itself, but that the evil lies in the prosecution possessing the statement before trial, then resisting a motion for severance so that the statement can be used against the nondeclarant defendant.

This situation does not appear in the present case. Here, as previously stated, the prosecution did not possess the statement at the time it moved for consolidation and it was not the prosecution that offered the statement at

---

[3]For the purposes of this appeal, there is no material difference between the prosecution successfully resisting a motion for severance, as was done in *Aranda,* and the prosecution's successful motion for consolidation for trial of appellant's and codefendant's cases as was done here.

[4]The rule of *Aranda* is technically dictum and referred to as such in *People* v. *Terry, supra,* but it has been adopted and followed in subsequent cases.

the trial. The record does not contain the argument made relative to the motion for consolidation but no point is raised on appeal as to the propriety of the trial court's ruling granting the motion. There is nothing to indicate in the record that the prosecution,[5] the appellant, or even the codefendant, knew at the time of consolidation that the codefendant would take the stand and make the questioned statement.

The reasoning underlying *Aranda* and *Terry,* namely the unfairness of the prosecution's actions, is not present where the statement is first made during the trial by a codefendant and the prosecution had no knowledge that the statement would be made at the time the motion to consolidate was argued. Thus, there is no compelling need to extend the rule of *Aranda* to this case.

The court in *Aranda* mentioned the fact that other jurisdictions had found the rule to be workable. If the rule, however, were extended to include an in-court statement, offered by a codefendant, it would not be workable. It would place in the hands of the defendants the power to obtain a mistrial at will. If a codefendant in his testimony made any statement ". . . that could be employed against nondeclarant codefendants once their identity is otherwise established" (*People* v. *Aranda, supra,* at p. 530), a mistrial would be required. Furthermore, the question could be consistently raised during trial as to whether the statement could be employed against the nondeclarant codefendant, resulting in delay in trial and frequent mistrials. Thus an extension of the rule would not be workable.

### *Although Aranda and Terry Do Not Require a Severance of Appellant's Case, Was the Granting of Severance Within the Sound Discretion of the Trial Judge?*

■ Appellant contends that the trial court had the power to grant severance but did not exercise the discretion in denying the motion for severance. At the trial, appellant's counsel stated: "I make a motion that he [codefendant] won't give any testimony that might incriminate my client, Mr. Wheeler." Respective counsel then argued the law relative to the motion. At the conclusion of the argument the court stated the law and then observing that the law may be changed in the future added "I am bound by the law today and cannot anticipate what the Supreme Court

[5]The prosecution stated in court: "Mr. Baltimore [codefendant's counsel] did indicate to me earlier that the possibility existed that Mr. Reed might take the stand and might indicate that there was a coercion involved here, but at the time the motion for consolidation was argued and until we were in the trial considerably, this was not made known to me."

will do. I overrule your motion." This clearly was the court's method of indicating a ruling, compelled by law.

A few minutes later in the trial, on the motion for severance, the court stated: "There would be a serious question of consolidation if these two theories had been known before the trial. The court feels if this had been known, at least in the court's opinion, the motion for consolidation would not have been granted, but in this stage and in this posture of the case, it is obviously impossible to entertain a motion of severance at this time." On this motion the court considered the stage of the proceedings and the position of the case before ruling. The court did not, as in the previous motion, say that the law prevented the granting of the motion or that he was bound by the law. The court's actions this time indicated an exercise of discretion in ruling on the motion.

The appellant contends the trial court refused to entertain a motion for severance. The court made the statement that it was impossible to entertain a motion for severance and indicated that it would deny the motion but then asked appellant's counsel if he was making a motion for severance *and a mistrial.* When counsel answered "yes," the court ruled on the motion. Thus the court not only allowed the motion to be made but in effect reminded counsel to move for a mistrial in addition to severance to protect his record. Appellant's claim that the court refused to allow the motion is without merit.

### *The Denial of the Motion for Severance Was Harmless*

■ As appellant has pointed out in *People* v. *Massie,* 66 Cal.2d 899, 922-923 [59 Cal.Rptr. 733, 428 P.2d 869], the court held that an erroneous denial of the severance did not require an automatic reversal, but reversal would be required if it was a "reasonable probability that the defendant would have obtained a more favorable result at a separate trial."

In the present case the only contested factual issue at trial was one of identity. The three eyewitnesses to the robbery identified appellant and codefendant as the robbers. The motor vehicle used in the robbery belonged to appellant's wife and though they were separated at the time, there was evidence that he did use the car on occasions. In the light of the evidence presented, there does not appear to be a reasonable probability that appellant would have achieved a more favorable result at a separate trial.

The judgment is affirmed.

Draper, P. J., concurred.

**BROWN (H. C.), J.**—I concur in the opinion of the majority of this court. I believe that it should be noted that the trial judge erred in his statement on the motion for severance that it was impossible to entertain that motion after the trial had commenced.

In *People* v. *Terry,* 2 Cal.3d 362, at page 386 [85 Cal.Rptr. 409, 466 P.2d 961], the court stated: "The Attorney General argues that *Aranda* is inapplicable because the judge did not have the alternative of granting separate trials and it would have been unfair to the People to exclude the confessions. He asserts that if the judge had granted a mistrial, so as to grant a severance, the double jeopardy rule would have barred further prosecutions of either defendant. This assertion is unsound. Before trial began and before *Aranda* was decided, a motion to sever had been made and the judge said it was denied by the court. The defendants never indicated in any way thereafter that they no longer desired a severance. Therefore, if, when the *Aranda* question later arose, the judge had granted a mistrial on his own motion, defendants would be deemed to have consented to the mistrial, since it was granted to achieve their original objective of severance. Of course, if defendants consent to a mistrial they cannot successfully later urge former jeopardy. (E.g., *Cardenas* v. *Superior Court,* 56 Cal.2d 273, 276 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371].) Moreover, if defendants had refused to consent to severance, it would appear that they had waived their rights under *Aranda,* because they would then have prevented the court from utilizing the only equitable solution to the *Aranda* problem." The motion for severance thus could have been entertained without creating a double jeopardy situation.

It is my view after an examination of the entire record and the overwhelming evidence of guilt that the error has not resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13.)