[Crim. No. 6240.   Second Dist., Div. One.   Oct. 20, 1958.]

THE PEOPLE, Respondent, v. HAWTHORNE HOPWOOD, Appellant.

James L. Garcia for Appellant.

Edmund G. Brown, Attorney General, and Lynn Henry Johnson, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from an order granting probation in a bookmaking case.

In an information filed in Los Angeles County, the appellant was charged in count I with a violation of Penal Code, section 337a, subdivision 1, in that on July 11, 1957, he had engaged in poolselling and bookmaking upon the result and purported result of a horse race; in count II he was charged with a violation of subdivision 3 of the above-mentioned section, in that on July 11, 1957, he received certain moneys wagered upon a horse race. It was also charged that appellant had previously been convicted of the crime of assault with intent to rob and that he had served a term in a state prison therefor.

The appellant pleaded not guilty and a trial by jury was waived. By stipulation the matter was submitted upon the transcript of the hearing at the preliminary examination. Each side reserved the right to introduce further evidence. The prosecution rested and the appellant offered additional evidence. The appellant was found guilty. No finding was made as to the alleged prior conviction because the district attorney, for some reason which is not readily apparent from the record, saw fit not to introduce any evidence with reference thereto. The appellant was sentenced to jail for 60 days

on each count, the sentences to run concurrently, and then such sentences were suspended and appellant was placed upon probation for one year upon condition that he pay a fine of $300 and that he not engage in bookmaking and similar activities for the same period.

A résumé of the facts is as follows: On July 11, 1957, Officer Hubert Greene of the police department went to a hot dog stand located on the southwest corner of Third and Central streets. The officer had been on the police department for two and one-half years, and for the last three and one-half months had been engaged in investigating and arresting persons for bookmaking in Los Angeles County. He had made a study of race track gambling and its modus operandi as carried on in Los Angeles County for race tracks and bookmaking, and was familiar with the customs and manner in which poolselling and bookmaking are conducted in Los Angeles County and had made 20 or 25 arrests for such offenses.

The officer seated himself at the hot dog stand and ordered a malt and a sandwich. While he was seated there an unidentified female seated herself next to him. They conversed, and after the conversation this female walked to the appellant, held a short conversation, and then returned to her place next to the officer at the bar. The officer remained at the bar and observed approximately three persons walk to the appellant, have a short conversation, and apparently hand to appellant something that appeared to be money. The appellant went to a telephone and appeared to make a telephone call after the other persons had given him money.

The officer then walked over to the appellant and stated that he had a good horse in the fifth that he would like to get if the horse had not been scratched. The appellant replied that he did not know the officer. The officer informed the appellant that he, the officer, lived right around the corner, that he did not play very often and that he had never made a bet with the appellant before. The appellant then stated, "I guess you are all right," and directed the officer to go to a car outside where he could find a copy of the National Daily Reporter. The officer went to the automobile and was handed a copy of the National Daily Reporter by an unidentified person in the car. He consulted the scratch sheet and selected a horse in the fifth race at Hollywood Park in Inglewood by the name of "Maquita." The officer then returned to the appellant and stated, "I would like $3.00 to win on number

five in the fifth.'' The appellant repeated the bet and took the $3.00. The appellant walked to the telephone and appeared to make a telephone call. The appellant then walked to the rear of the hot dog stand and the officer gave a pre-arranged signal to his partners. When they arrived the appellant was placed under arrest.

The defendant testified in his own behalf, and in effect, stated that he did not take or place a bet with or for the officer.

The appellant asserts (1) that the evidence is insufficient to show the offense was committed within three years of the filing of the information; (2) that the evidence is insufficient to sustain the conviction.

Appellant argues, with reference to the first contention, that the burden was upon the prosecution to show that the information was filed within the period of the statute of limitations, and that the state failed to carry its burden. Section 800 of the Penal Code provides as follows:

''An indictment for any other felony than murder, the embezzlement of public money, the acceptance of a bribe by a public official or a public employee, or the falsification of public records, must be found, and information filed, or case certified to the superior court, within three years after its commission. . . .''

In this particular cause the information was filed on August 22, 1957, charging the appellant with the commission of the offenses on July 11, 1957. The officer testified that on July 11, at 1:30 o'clock p.m., he went to the hot dog stand, and that the appellant was arrested at 2 p.m. on July 11. Appellant seems to insist that there is no designation of what year was meant by the officer. We are not required to close our eyes to the commonly accepted fact that in ordinary speech a reference to ''July,'' without mention of the year, indicates a reference to the ''July'' immediately past. Furthermore, in this particular instance, the officer had been a policeman for only two and one-half years, and it is obvious that he referred to July 11, *1957*, and not to a July previous to such employment.

Appellant is incorrect in his assertion that there was no evidence as to how bookmaking is commonly conducted in Los Angeles. The officer did testify that he had made 25 arrests for bookmaking, that he had testified in court 15 times as a result of such arrests and that he was familiar with the customs and manner in which bookmaking was conducted

in Los Angeles County. He also testified that bookmakers in Los Angeles County commonly used the National Daily Reporter, the Daily Racing Form, and he described the different materials in which bookmakers record bets. In any event, in this particular case, it does not lie with the appellant to complain at this point, for it is clear from the record that the officer was going to testify more fully as to the customs of bookmakers in Los Angeles County but was cut off by counsel for the appellant, as indicated by the following excerpt from the record:

"Q. [by the deputy district attorney] : Officer, what documents, records and paraphernalia are commonly used in bookmaking and pool selling, in Los Angeles County? ·A. The documents most commonly used are the National Daily Reporter and the daily racing form and different materials in which bookmakers record bets, and formica and paper and pencil and pencils and ink.

"THE COURT: Do you want to stipulate?

"MR. MARGID [counsel for defendant] : I think he is about through.

"THE COURT: I noticed that you were trying to get his attention there.

"MR. MARGID: I was telling him under the facts that I knew it, he doesn't need all these questions he is asking.

"THE COURT: Are you satisfied then as to his qualifications, Mr. Margid?

"MR. MARGID: Yes, I am.

"THE COURT: All right, proceed.

"MR. PLUNKETT: Thank you, counsel."

Counsel for appellant having indicated, as above set forth, that it was not necessary to proceed further, the appellant surely cannot now press the argument that there was no sufficient foundation in the record. (*People* v. *Boyles*, 45 Cal. 2d 652, 656 [290 P.2d 535].)

Appellant also asserts that in count II the charge of accepting a bet in violation of Penal Code, section 337a, subdivision 3, was a necessarily included offense in count I, the charge of bookmaking in violation of Penal Code, section 337a, subdivision 1, and that therefore he cannot be convicted on both counts.

The mere fact that multiple convictions are based upon acts closely related in point of time and arising out of the same criminal venture, as was the situation in this case,

does not raise the bar of section 654 of the Penal Code. (*In re Chapman*, 43 Cal.2d 385, 389 [273 P.2d 817].) The question is, whether or not each conviction was based upon a separate and distinct act (*People* v. *Knowles*, 35 Cal.2d 175, 187 [217 P.2d 1]), whether or not the criminal transaction was a divisible transaction, and the answer in each case must be resolved upon its own facts. (*People* v. *Brown*, 49 Cal.2d 577, 591 [320 P.2d 5].)

In our opinion, the criminal venture in the case at bar was a divisible transaction, and counts I and II were based upon separate and distinct acts.

The order is affirmed.

White, P. J., and Lillie, J., concurred.