[No. 39368.     Department One.     December 21, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE DENNISON, *Appellant.*\*

\*Reported in 435 P.2d 526.

*Fred Floch,* for appellant (appointed counsel for appeal).
*James R. Thomas* and *R. E. Young,* for respondent.

WARD, J.†—The defendant, George Dennison, was charged in two counts with the crime of carnal knowledge, and in an additional count with the crime of incest. He was tried, convicted on all three counts, and appeals from the judgments entered.

The assignments of error presented to this court do not require a full recital of the facts upon which the jury found the defendant guilty.

Defendant's first assignment requires determination of the sufficiency of the evidence to establish venue in Okanogan County. No witness testified specifically that the acts charged were committed in that county. One of the two girls involved testified that the acts charged were committed near Crumbacher Lake, "a little ways" off the highway during a stop on a motor trip which the defendant, accompanied by the two girls, was making from Tonasket to Omak. The other girl located the place without reference to the lake, but off the highway between Tonasket and Omak.

The two girls also testified to other acts of carnal knowledge and incest committed on the evening of the same day at a place which one of the girls located "up into the hills there," after taking the road leading to the sawmill out of Tonasket. Other evidence indicated that this was "approximately 10 miles from Tonasket."

■ Proof that the offenses charged were committed in Okanogan County is not necessarily insufficient solely because of the state's failure to produce a witness who testi-

---

†Judge Ward is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

fied directly to that fact. *State v. Fetterly,* 33 Wash. 599, 74 Pac. 810 (1903); *State v. Hurlbert,* 153 Wash. 60, 279 Pac. 123 (1929). Venue in a criminal case may be proven by either direct or circumstantial evidence. *State v. Kincaid,* 69 Wash. 273, 124 Pac. 684 (1912).

■ There was testimony that the first offenses were committed near Crumbacher Lake. Judicial notice may be taken that a well-known lake is located within the boundaries of the county wherein the lake lies, and testimony that the crimes were committed near the lake is sufficient to prove venue. *State v. Williams,* 124 Wash. 160, 213 Pac. 921 (1923).

The court, in criminal cases, may take judicial notice that cities are within the boundaries of the counties wherein they are located. In *State v. Heppell,* 148 Wash. 664, 667, 269 Pac. 1046 (1928), we said: "In many cases it has been held that judicial notice will be taken of the location of a particular city or town in a particular county; and, of course, to do that we must also take judicial notice of the boundaries of the county." See also *State v. Evans,* 143 Ore. 603, 22 P.2d 496 (1933); 1 F. Wharton, Criminal Evidence §§ 54, 59 (12th ed. 1955). In 3 F. Wharton, Criminal Evidence § 981 at 479 (12th ed. 1955), the text states: "For the same reason, venue may be sufficiently shown by testimony which shows that the crime was committed at a place which is so located that it must necessarily lie within the county." (Footnote omitted.)

With the location of the town of Tonasket and the location of the county boundaries both judicially noticeable, the jury could well determine whether traveling a distance of 10 miles in any direction from Tonasket would be sufficient to reach an adjoining county. The evidence was sufficient to permit the jury to determine that both series of crimes were committed in Okanogan County without resort to speculation or conjecture.

■ Defendant assigns error upon the failure of the state's witnesses to specifically designate the year in giving their testimony as to the date of the commission of the

offenses. The assignment is without merit. The trial commenced on November 30, 1966, just 4 months after the time of the offenses. The physical condition of several exhibits which had been discarded by the defendant and picked up by the juvenile probation officer at the place where the offenses were committed, provided circumstantial evidence from which the jury could determine that the offenses were not committed in 1965 or prior years. The time of an offense may be established by circumstantial evidence. 23 C.J.S. *Criminal Law* § 915 at 619 (1961). When the time of commission of an offense is stated in the testimony, but without specifically designating the year, it will ordinarily be understood as a reference to the current year in the absence of anything showing a contrary intent. *People v. Hopwood,* 164 Cal. App. 2d 391, 330 P.2d 447 (1958). The exact issue, under almost identical facts, was considered by this court in *State v. Heppell, supra,* and determined adversely to defendant's contention. We find nothing to persuade us that we should now reach a different conclusion.

A third assignment of error, also directed to defendant's claim that the evidence failed to establish the commission of the crimes charged, was directed to the testimony of the two juvenile witnesses upon whom the offenses were committed. The defendant claims that the testimony failed to establish proof of the commission of the acts charged when measured by the statutory requirement of RCW 9.79.030: "Any sexual penetration, however slight, is sufficient to complete sexual intercourse or carnal knowledge." One witness used somewhat general terms, stating that she had "relations" with the defendant at the time and place charged. More specifically she testified: "Then I took pictures of . . . and Dad with their parts together and then . . . took a picture of me and Dad with our parts together." The other girl described in more specific language, the commission of the act: "A. Then he got on top of me. Q. He got on top of you? A. He took off his clothes. Q. I am sorry, . . . it is hard to hear. A. I say he took off his clothes. Q. And what happened when he got on top

of you . . .? A. Then he pushed his private parts into my private parts."

The offense near Tonasket was described in similar language. Defendant purchased a package of contraceptives and used one on the older of the two girls. She testified: "After he put them into me he got on top of me and he pushed his private parts into mine, then he did the same thing to . . . ."

■ The foregoing, together with additional testimony in the record, similarly describing the acts, was sufficient to permit the jury to determine beyond a reasonable doubt and without resort to speculation or conjecture, that the act described in RCW 9.79.030 had been committed on both girls. It was not necessary that the term "private parts" be further defined. The term is generally understood as a commonplace designation of the genital procreative organs. *Pendell v. State*, 158 Tex. Crim. 119, 253 S.W.2d 426 (1952). In *State v. Moore*, 194 Ore. 232, 240, 241 P.2d 455 (1952), the court said: "It is hornbook law that, whenever and wherever the terms 'privates' or 'private parts' are used as descriptive of a part of the human body, they refer to the genital organs. Every dictionary so defines them."

The court's instruction No. 20 stating the requirement of proof of the criminal act in the exact language of RCW 9.79.030 was sufficient, and the defendant's claim that further elaboration should have been given in accordance with his requested instructions is without merit.

The defendant claims misconduct of the prosecuting attorney in his closing argument to the jury sufficient to impair his constitutional right to trial before an impartial jury under Const. art. 1, § 22 (amendment 10). The claimed error is based on the following statement by the prosecuting attorney made in answering the argument of defendant's counsel. "Failure of the state to call the man's wife. Mr. Floch accused me of that. He has forgotten that I cannot call the man's wife. Under the Constitution I cannot call a man's wife to testify, but also notice the defense didn't call the wife in and they can." Defendant claims that

this misstatement of the law was made deliberately. We believe, however, that both the prosecuting attorney and defense counsel inadvertently overlooked the amendment of RCW 5.60.060, effective on March 19, 1965, which permits one spouse to be called as a witness against the other spouse in a criminal action against one parent for a crime committed by that parent against her or his child. It would appear that the prosecuting attorney would not deliberately subject himself to being placed in the embarrassing position before the jury which would have resulted, had the court been called upon to instruct the jury that his argument contained a misstatement of the law which should be disregarded. It would appear that the defendant's counsel also inadvertently overlooked the amendment to RCW 5.60.060 because he neither objected to the statement nor made any motion directed to it as a prejudicial misstatement of the law.

■ Reversible error cannot be based upon this record of the incident. It does not belong to that class of acts, occurring in the presence of the jury, wherein the act of misconduct is so flagrant or the effect is so prejudicial, that no direction by the court to disregard, could remove its damaging effects from the minds of an impartial jury. The rule which we stated in *State v. Cogswell*, 54 Wn.2d 240, 242-43, 339 P.2d 465 (1959), applies in this situation:

> As a general rule, this court will not consider an assignment of error based upon alleged misconduct of a prosecuting attorney unless the aggrieved party has made timely objection and requested an instruction that the jury disregard the incident. *State v. Taylor*, 47 Wn. (2d) 213, 287 P. (2d) 298 (1955). An exception to the rule is found in those cases where the misconduct has been so flagrant that an instruction could not cure it. *State v. Case*, 49 Wn. (2d) 66, 72, 298 P. (2d) 500 (1956), and cases cited. If such be the case, then the aggrieved party has not received a fair trial.

The defendant's final assignment of error is also based upon a claim of misconduct on the part of the prosecuting attorney in his closing argument to the jury, in which he

said: "Mike, the boy that I put on the stand. Isn't it obvious what happened? He backed up!" After the court, on defendant's objection, directed the jury that the remark should be stricken, the prosecuting attorney stated further: "The question of Mike was raised by Mr. Floch in his argument and statement made of the fact that he didn't admit anything. What do you expect? He did testify that he was the son of Mr. Dennison so what do you expect?" The court granted defendant's motion to strike the remarks of counsel and directed the jury to disregard the statement, and stated: "[A]nd don't mention it again, counsel." The court did not grant the defendant's motion for a mistrial.

Mike Warren Dennison, minor son of defendant, had been called as a state's witness. His testimony was brief. He stated his name and place of residence, and his relationship to the defendant and to other members of the family. Other than that, his testimony consisted solely of the following questions and answers: "Q. Did you have occasion to observe your father and . . . having sexual relations? A. No. Q. You did not? A. No. MR. THOMAS: Very well. That is all."

The record sets out the state's opening and closing arguments to the jury, but omits the defendant's argument. From the record before us, however, we note that (1) the prosecuting attorney did not refer to the boy's testimony in his opening argument; (2) the defendant's counsel was the first to focus the jury's attention on the testimony; (3) defendant's counsel apparently attempted to use the testimony to defendant's advantage; (4) such trial tactics on the part of defendant's counsel invited comment by the prosecuting attorney in rebuttal.

We do not find that the prosecuting attorney's comments in rebuttal constituted such misconduct as to require that the conviction be set aside. No juror could have been so naive as to think that the prosecuting attorney had put the boy on the stand for the purpose of showing that he had not observed his father committing the offense. The second comment by the prosecuting attorney was merely a

statement of the probable cause of the answer received, and by far the most probable cause. Neither comment went beyond the conclusion which an impartial jury might have reached without any comment whatsoever on the part of counsel. These comments were invited by argument of defendant's counsel in attempting to use the testimony of the boy to his own advantage. We stated the rule in *State v. LaPorte,* 58 Wn.2d 816, 822, 365 P.2d 24 (1961), which applies to this type of incident:

> As a general rule, remarks of the prosecutor, including such as would otherwise be improper, are not grounds for reversal where they are invited, provoked, or occasioned by defense counsel and where they are in reply to or retaliation for his acts and statements, unless such remarks go beyond a pertinent reply and bring before the jury extraneous matters not in the record, or are so prejudicial that an instruction would not cure them. See *State v. Wright,* 97 Wash. 304, 308, 166 Pac. 645 (1917).

See also *State v. Collins,* 50 Wn.2d 740, 314 P.2d 660 (1957); *State v. Cunningham,* 51 Wn.2d 502, 319 P.2d 847 (1958).

Any prejudicial effect of the prosecuting attorney's statement was very effectively dealt with by the court's direction to the jury and by the court's admonition to counsel. The incident does not require the granting of a new trial.

The judgment is affirmed.

FINLEY, C. J., HILL, WEAVER, and ROSELLINI, JJ., concur.