# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71661-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ALEXIS J. SCHLOTTMANN, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 16, 2014 |

TRICKEY, J. — Alexis Schlottmann appeals the judgment and sentence entered following her convictions arising from her participation in several residential burglaries. Schlottmann claims errors based on a partial jury, ineffective assistance of counsel, and prosecutorial misconduct. Finding no error, we affirm.

## FACTS

Emily McMason lived across from Marian Finely on a dead-end street.[1] On the afternoon of November 18, 2011, McMason noticed an unfamiliar dark green Mazda minivan pull into Finely's driveway.[2] The vehicle parked on the driveway, and its driver emerged holding a piece of paper.[3] McMason observed the driver as she walked around the house, examined the surroundings, and peered into windows.[4] When McMason saw the driver remove a crowbar from the vehicle, she called 911 to report this suspicious activity.[5]

---

[1] 1 Report of Proceedings (RP) (October 15, 2012, afternoon) at 75.
[2] 1 RP at 75-76, 81.
[3] 1 RP at 77.
[4] 1 RP at 77-78.
[5] 1 RP at 79.

McMason then noticed the passenger of the vehicle—later identified as Schlottmann—exit the minivan and, together with the driver, break into Finely's residence through the front door.[6] After approximately 10 minutes, Schlottmann and the driver exited the residence.[7] McMason noticed Schlottmann carrying a stack of what appeared to be manila file folders.[8] The driver was hauling a large bag with items protruding from the inside.[9] Schlottmann and the driver returned to the vehicle and departed from the scene.[10]

McMason relayed these observations to the 911 dispatcher as they occurred.[11] Over the telephone, McMason provided a detailed description of the minivan, its license plate, and the driver and passenger.[12]

Law enforcement officers subsequently arrived at McMason's residence.[13] While they interviewed McMason, the Olympia Police Department stopped a dark green Mazda with a license plate number identical to that which McMason had previously provided.[14] The police stopped the minivan approximately three miles from the Finely residence.[15] The driver of the vehicle was identified as Darlene Lockard and the passenger was Schlottmann.[16]

McMason thereafter identified both woman as the individuals she

---

[6] 1 RP at 79, 81-82.
[7] 1 RP at 83-84.
[8] 1 RP at 84.
[9] 1 RP at 84.
[10] 1 RP at 85.
[11] 1 RP at 80.
[12] 1 RP at 80-81.
[13] 1 RP at 87.
[14] 1 RP at 33-34, 91.
[15] 1 RP at 35-36.
[16] 1 RP at 35-36.

witnessed burglarize Finely's residence.[17] After a search warrant was obtained, Thurston County deputies searched the minivan and took an inventory of all of the items discovered inside.[18] The deputies recovered 48 stolen items.[19] Among them was a Savage .32 caliber pistol, a crowbar, a set of knives, a glass jar of coins, a piece of paper with the words "The Dynamic Duo" written on it, and a checkbook with checks containing the name "Japhet Bulkheading Incorporated, Floyd or Grace Japhet."[20] Finely identified 45 items stolen from her residence, including the pistol.[21] The knives, glass jar, and checkbook did not belong to Finely.[22]

The Thurston County Sherriff's office soon determined that Schlottmann and Lockard were the perpetrators responsible for two other burglaries that took place near Finely's residence. On the same day as the Finely burglary, Schlottmann and Lockard also burglarized Guy Winkleman's residence, located approximately four miles away from Finely.[23] Approximately $7,000 worth of property had been stolen.[24] On November 17, 2011, Lockard and Schlottmann burglarized the residence of Donald and Lisa Japhet.[25] Lockard and Schlottmann stole several items, including the checkbook for Japhet

---

[17] 1 RP at 38, 92.
[18] 1 RP at 41.
[19] 1 RP at 42.
[20] 1 RP at 41, 46, 48, 54.
[21] 1 RP at 43-46; 2 RP (October 16, 2012) at 170-71.
[22] 1 RP at 48, 54.
[23] 2 RP at 241, 245.
[24] 3 RP (October 17, 18, 19, 30, 2012) at 334.
[25] 2 RP at 197.

3

Bulkheading, a computer, a helmet camera, and some jewelry.[26] The police determined that a crowbar was used to break into the residence.[27]

The State charged Schlottmann, by second amended information, with first degree burglary while armed with a firearm (Count I); theft of a firearm (Count II); second degree unlawful possession of a firearm (Count III); second degree theft (Counts IV, VII, and XI); third degree malicious mischief (Count V); first degree burglary (Count VI); second degree malicious mischief (Counts VIII and X); residential burglary (Count IX); and second degree possession of stolen property (Counts XII and XIII).[28] Counts I, II, IV, and V were for crimes committed against the Finely residence. Schlottmann pleaded not guilty to these charges.[29]

A jury trial was held on October 15 to October 19, 2012. The State presented the testimony of numerous witnesses, including McMason, Finely, Winkelman, Donald and Lisa Japhet, and several law enforcement officers involved in the investigations.[30]

Following trial, the jury convicted Schlottmann of first degree burglary (Count I); theft of a firearm (Count II); theft in the second degree (Counts IV, VII, and XI); third degree malicious mischief (Count V); residential burglary as a lesser included charge (Count VI); malicious mischief in the second degree (Counts VIII and X); residential burglary (Count IX); and possession of stolen

---

[26] 2 RP at 200-202
[27] 2 RP at 236-37.
[28] Clerk's Papers (CP) at 34-37; 4 RP at 4-7; 3 RP at 316.
[29] 3 RP at 316-17.
[30] 1 RP at 5, 32, 68, 72; 2 RP at 116, 151, 193, 209, 233; 3 RP at 295, 307, 328.

property in the second degree (Counts XII and XIII).[31] The trial court imposed a sentence of 96 months followed by 18 months of community custody.[32]

Schlottmann appeals.

## ANALYSIS

### Impartial Jury Claim

Schlottmann first contends that the trial court violated her right to a fair and impartial jury when, after voir dire, it denied her motion to dismiss a juror. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution guarantee the right to trial by an impartial jury. State v. Latham, 100 Wn.2d 59, 62-63, 667 P.2d 56 (1983). RCW 2.36.110 and CrR 6.5 also protect the right to an impartial jury. While RCW 2.36.110 "provides the grounds for which the court may dismiss a juror," CrR 6.5 sets forth the procedures under which an excused juror is replaced. State v. Depaz, 165 Wn.2d 842, 852, 204 P.3d 217 (2009); see also State v. Rafay, 168 Wn. App. 734, 821, 285 P.3d 83 (2012) ("RCW 2.36.110 governs the removal of jurors."). Pursuant to RCW 2.36.110, a judge has a duty "to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, . . . or by reason of conduct or practices incompatible with proper and efficient jury service." CrR 6.5 states, "If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged." These provisions place the

---

[31] CP at 117.
[32] CP at 122.

trial court under a continuous obligation to excuse a juror who is unfit and unable to perform the duties of a juror. State v. Jorden, 103 Wn. App. 221, 226-27, 11 P.3d 866 (2000).

The trial court's ability to observe a juror puts the trial court in the best position to determine whether the juror can be fair and impartial. State v. Rupe, 108 Wn.2d 734, 749, 743 P.2d 210 (1987). Accordingly, we review for abuse of discretion the trial court's decision to remove a juror. Rafay, 168 Wn. App. at 821. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Depaz, 165 Wn.2d at 858.

At the inception of voir dire, the trial court read each of the charges to the venire.[33] The trial court noted the date on which each charged crime took place—November 17 or 18, 2011.[34] The court then instructed the prospective jurors: "You must not withhold information in order to be seated on this particular jury. You should be straightforward in your answers and not just answer in a way that you hope the lawyers or the court might hope or expect you to answer."[35]

During voir dire, the trial court asked the prospective jurors: "Have any of you personally had an experience that is similar to the type of incident or events that were described to you? About what this case is about."[36] At this time, the venire had only been made aware of the State's charges against Schlottmann and the dates the crimes allegedly took place. After a number of potential jurors raised their hands, the trial court added, "[W]e're just trying to determine if it's too

---

[33] 4 RP (October 15, 2012, morning) at 4-7.
[34] 4 RP at 4-7.
[35] 4 RP at 9.
[36] 4 RP at 19.

6

close to something that maybe that you have some personal experience or someone in your family close to you."[37] The court proceeded to inquire further of those jurors who raised their hands.[38] Juror No. 1 did not raise his hand.[39]

Defense counsel later addressed the venire:

> What [the trial court] wanted to know is specifically if these type of instances are either so fresh in your recollection or so fresh or that made such an impact on you that it would be -- interfere with your ability to listen to the evidence, interfere with your ability to give each side, both the prosecutor and the state, a fair trial.[40]

After the jury was impaneled, trial counsel made opening arguments. During the State's opening argument, the prosecutor provided more details to the jury about the case.[41] He reiterated that the case began in November, and specified the neighborhoods and streets in which the crimes were alleged to have occurred.[42]

At the beginning of trial the next day, before the witnesses were called, Juror No. 1 brought to the trial court's attention that his residence had been the subject of an attempted burglary.[43] He informed the court that he lived near Finely's residence and that on November 10, 2011, his door had been damaged by what he believed to be a crowbar.[44] The prosecutor and defense counsel were given the opportunity to question the juror about this incident.[45] The

---

[37] 4 RP at 19.
[38] 4 RP at 19-22.
[39] 4 RP at 19.
[40] 4 RP at 49-50.
[41] 4 RP at 90-97.
[42] 4 RP at 90-91, 93-94.
[43] 2 RP at 109.
[44] 2 RP at 109-12.
[45] 2 RP at 109-11.

prosecutor asked the juror whether he "could set that aside and just decide this case based on the facts that are presented to [him] in court."[46] The juror answered affirmatively.[47]

Defense counsel moved to excuse the juror.[48] Defense counsel argued that the similarities between the two cases were substantial and that had he been aware of the juror's experience, he would have made a for cause or peremptory challenge.[49] The trial court denied the motion, concluding that no sufficient showing had been made to excuse the juror.[50] The court reasoned that "nothing that [Juror No. 1] said . . . rises to the level of the other people who were excused for cause who had similar experiences."[51]

The trial court did not abuse its broad discretion by denying Schlottmann's motion to excuse Juror No. 1. The mere fact that Juror No. 1 made mention of the attempted burglary at the start of the second day of trial bolstered his credibility and strongly suggested that he could serve as a fair juror.

Moreover, during voir dire, the jury venire was not offered any specific information regarding the charged crimes. Neither counsel nor the trial court informed the venire of the location in which the charged crimes took place. The parties also did not mention that the perpetrators employed a crowbar to break into the residences. The only knowledge the venire had about the case was the charged crimes and the alleged dates of those crimes. Then, after the jury was

---

[46] 2 RP at 111.
[47] 2 RP at 111.
[48] 2 RP at 113.
[49] 2 RP at 113-14.
[50] 2 RP at 115.
[51] 2 RP at 115.

8

impaneled, the prosecutor offered more information about the crimes, including the location in which one of the burglaries took place. It is reasonable to infer that Juror No. 1 recognized the similarities between the charged crimes and the attempted burglary of his residence once the prosecutor provided these details during opening arguments.

Furthermore, upon inquiry, Juror No. 1 expressed his belief that he could set his experience aside and decide the case based upon the evidence produced at trial. The trial court is in the best position to evaluate the juror's candor and impartiality. State v. Elmore, 155 Wn.2d 758, 769 n.3, 123 P.3d 72 (2005). We accept the trial court's discretion in determining that Juror No. 1 was not unfit to serve. Schlottmann was not convicted by an unfair or partial jury.

Ineffective Assistance of Counsel Claim

Schlottmann next contends that she was denied effective assistance of counsel because defense counsel conceded guilt to several criminal counts. We disagree.

An accused's right to effective assistance of counsel derives from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. State v. Grier, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 229, 743 P.2d 816 (1987)).

To prevail on a claim of ineffective assistance of counsel, Schlottmann must prove deficient performance and resulting prejudice. State v. McFarland,

9

127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Schlottmann bears the burden of overcoming "'a strong presumption that counsel's performance was reasonable.'" Grier, 171 Wn.2d at 33 (quoting State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Deficient performance exists where defense counsel's representation "fell below an objective standard of reasonableness based on consideration of all the circumstances." McFarland, 127 Wn.2d at 334-35.

If defense counsel's performance can be characterized as legitimate trial strategy or tactics, performance is not deficient. Grier, 171 Wn.2d at 33. But "a criminal defendant can 'rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" Grier, 171 Wn.2d at 33 (quoting State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); State v. Aho, 137 Wn.2d 736, 745-46, 975 P.2d 512 (1999)).

Schlottmann alleges that during opening arguments, defense counsel admitted her guilt to all of the charges involving the Finely residence, including first degree burglary. Schlottmann is mistaken. The record reflects that defense counsel admitted to a lesser included crime of residential burglary.[52] See RCW

---

[52] To convict Schlottmann of Count I, first degree robbery, the jury was instructed to find the following relevant elements beyond a reasonable doubt:
> (1) That on or about November 18, 2011, the defendant or an accomplice, entered or remained unlawfully in a building;
> (2) That the entering or remaining was with intent to commit a crime against a person or property therein;
> (3) That in so entering or while in the building, to wit: residence at Marian Finley [sic] or in immediate flight from the building the defendant or an accomplice in the crime charged was armed with a deadly weapon.

9A.56.040; 9A.52.025. Defense counsel also admitted to second degree theft and third degree malicious mischief.

The following excerpt from opening arguments is illustrative:

> But we'll tell you right up front they will be able to prove some of these charges, and some of the charges involving Ms. Finely's home.
> 
> Yes, Ms. McMason was being a good neighbor. Ms. McMason, I think the evidence will even show, she brought out the binoculars so she could get the good information such as license plate number to the van and clothing descriptions, yes. And regrettably, Ms. Schlottmann used some very poor judgment, that's in fact criminal judgment, **and that she went into a home where she should not have been, where she did not have permission to be inside**, and she went with Darlene Lockard.
> 
> . . . And yes, **while inside Ms. Finely's house, many items were taken, but Ms. Schlottmann didn't have a right to, and we'll be up front about that.**[53]

At closing argument, defense counsel again acknowledged, "Ms. Lockard and Ms. Schlottmann did in fact go into Ms. Finely's house illegally without permission and take items from the house."[54] Defense counsel further stated, "Certainly she [was an accomplice] in the burglary of Ms. Finely's home. Certainly she did that with the stealing of many expensive items."[55]

Defense counsel also conceded Schlottmann's guilt to malicious mischief

---

CP at 76.

To convict Schlottmann of residential burglary as a lesser degree of first degree burglary, the jury was instructed to find the following relevant elements beyond a reasonable doubt:

(1) That on or about November 18, 2011, the defendant, or an accomplice, entered or remained unlawfully in a dwelling, to wit: residence of Marian Finley [sic];

(2) That the entering or remaining was with intent to commit a crime against a person or property therein.

CP at 78.

[53] 4 RP at 97-99 (emphasis added).
[54] 3 RP at 408.
[55] 3 RP at 409-10.

in the third degree, for damaging Finely's door.[56]

Accordingly, in total, trial counsel conceded guilt to three offenses: third degree malicious mischief, second degree theft, and residential burglary, a lesser included offense to first degree burglary.

Notwithstanding these concessions, defense counsel vigorously defended Schlottmann on the remaining counts, including the crime of first degree robbery while armed with a firearm. Defense counsel denied that Schlottmann either took a weapon or knew that a weapon had been stolen and argued that, therefore, Schlottmann could not be found guilty as an accomplice to the charges of theft of a firearm or first degree burglary.[57] Counsel expressly indicated that "given the absence of proof, it would be inappropriate to find her guilty of theft of a firearm and inappropriate to find her guilty of the more serious offense of burglary in the first degree."[58] Defense counsel further noted, "[The] burglary was a residential burglary because the [S]tate has not proven beyond a reasonable doubt that the weapon used there was being used as defined by the definition as a deadly weapon."[59] Defense counsel additionally denied all the remaining counts related to the Japhet and Winkelman residences.[60]

Furthermore, contrary to Schlottmann's contention, it is evident that defense counsel's concessions were a trial tactic aimed at enhancing Schlottmann's credibility in order to avoid convictions on the remaining charges,

---

[56] 3 RP at 410-11, 413-14.
[57] 3 RP at 408-13.
[58] 3 RP at 410.
[59] 3 RP at 413.
[60] 3 RP at 414-25.

particularly first degree burglary while armed with a firearm. In light of the overwhelming evidence, this strategy was reasonable.

Conceding guilt on a particular count can be a sound trial tactic when the evidence on that count is overwhelming. State v. Silva, 106 Wn. App. 586, 596, 24 P.3d 477, review denied, 145 Wn.2d 1012 (2001). This approach may win the jury's confidence and preserve the defendant's credibility when a more serious charge is at stake. State v. Hermann, 138 Wn. App. 596, 605, 158 P.3d 96 (2007); Silva, 106 Wn. App. at 597-98. Defense counsel is not required to consult with the client before making this strategic move. Silva, 106 Wn. App. at 596 (citing Underwood v. Clark, 939 F.2d 473, 474 (7th Cir.1991)).

Here, Schlottmann makes no effort to contend that the evidence of her guilt as to the conceded charges was not overwhelming. Nor could she do so convincingly. At trial, the State presented the following evidence: an eyewitness who observed the burglary, provided the police a detailed description of the suspects and the vehicle, and later identified the suspects shortly after the crime; evidence that the vehicle and physical characteristics of suspects matched the eyewitness's description; evidence that the items recovered in the minivan were identified as belonging to Finely; evidence that the minivan identified by the eyewitness was stopped in close proximity to Finely's residence. The State's evidence pertaining to the crimes against the Finely residence was immense. Defense counsel's decision to admit to these crimes was a strategic one intended to earn the jury's favor and preserve Schlottmann's credibility as to the remaining charges. Accordingly, Schlottmann's claim fails.

13

Prosecutorial Misconduct Claim

Schlottmann contends, finally, that three of the prosecutor's remarks made during closing argument deprived her of a fair trial. Again, we disagree.

A prosecutor owes a defendant a duty to ensure the right to a fair trial is not violated. State v. Monday, 171 Wn.2d 667, 676, 257 P.3d 551 (2011). A defendant claiming prosecutorial misconduct bears the burden of demonstrating that the challenged conduct was both improper and resulted in prejudice. State v. Cheatam, 150 Wn.2d 626, 652, 81 P.3d 830 (2003). We review alleged misconduct "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

Once a defendant establishes that the prosecutor's conduct was improper, a reviewing court determines whether the defendant was prejudiced. State v. Emery, 174 Wn.2d 741, 760, 278 P.3d 653 (2012). If the defendant objected at trial, on appeal he or she "must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." Emery, 174 Wn.2d at 760.

Following closing arguments, defense counsel moved for a mistrial based upon the prosecutor's comments that she now challenges on appeal.[61] The trial court denied the motion.[62] "The decision to deny a request for mistrial based upon alleged prosecutorial misconduct lies within the sound discretion of the trial

---

[61] 3 RP at 439.
[62] 3 RP at 442.

court, and it will not be disturbed absent an abuse of discretion." <u>State v. Russell</u>, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

At closing argument, while reviewing the evidence surrounding the Finely burglary, the prosecutor made the following comment:

> They took similar items. They want jewelry, electronics, and they wanted that checkbook. Why do people burglarize houses? I mean, this probably isn't too hard of a concept. **They want drugs and they want money. And money equals drugs or drugs equals money, one of the two. And they want things that they can sell quickly--**.[63]

Defense counsel objected to this comment, arguing that it was inflammatory.[64] The trial court held a sidebar, after which the court instructed the prosecutor to "[g]o ahead."[65]

Schlottmann contends that by making this remark, the prosecutor improperly referenced evidence outside of the record and prejudicially implied that Schlottmann burglarized homes in order to purchase drugs.

A prosecutor is allowed wide latitude in closing arguments to draw reasonable inferences from the facts in evidence and to express such inferences to the jury. <u>State v. Gregory</u>, 158 Wn.2d 759, 860, 147 P.2d 1201 (2006); <u>Dhaliwal</u>, 150 Wn.2d at 577. But a prosecutor is not permitted to make prejudicial statements that are not supported by the record. <u>State v. Ramos</u>, 164 Wn. App. 327, 341, 263 P.3d 1268 (2011). Similarly, "[m]ere appeals to the jury's passion or prejudice are improper." <u>Gregory</u>, 158 Wn.2d at 808.

Here, the prosecutor improperly appealed to the jury's passion and

---

[63] 3 RP at 396 (emphasis added).
[64] 3 RP at 396.
[65] 3 RP at 396.

prejudice. The prosecutor's remark was designed to portray Schlottmann as a drug user or addict whose motive in the burglaries was to procure drugs. There was no evidence presented to the jury that established such a motive. This comment exceeded the wide latitude granted to prosecutors in closing argument.

Nevertheless, Schlottmann does not demonstrate that the prosecutor's comment substantially affected the jury verdict. The remark was made in the context of a prolonged trial as well as a lengthy closing argument. A sidebar was immediately held following this comment, after which the prosecutor did not mention the alleged drug related motive again. Additionally, the jury was instructed to "decide the facts in this case based upon the evidence presented."[66] The jury was also directed "that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits."[67] We presume that jurors follow instructions to disregard improper evidence. State v. Russell, 125 Wn.2d 24, 84, 882 P.2d 747 (1994).

Schlottmann has not shown prejudice as a result of the prosecutor's improper comment. Accordingly, the trial court did not err in denying Schlottmann's motion for mistrial with respect to this comment.

Schlottmann next contends that the prosecutor committed misconduct by making the following remarks during closing argument: "Again, Ms. Lockard and Schlottmann are two burglars and thieves with no conscience."[68] In rebuttal, the

---

[66] CP at 55.
[67] CP at 56.
[68] 3 RP at 401.

prosecutor stated that "[Schlottmann] wanted to victimize other people."[69] Schlottmann did not object to these remarks.[70]

Schlottmann contends that the prosecutor injected his own opinion as to Schlottmann's motives for committing the crimes, which were outside of the record. She is incorrect. These statements were proper inferences based on the evidence produced at trial.

Even assuming that the comments were improper, Schlottmann fails to establish prejudice. She makes no effort to show that there was a substantial likelihood that the prosecutor's comments affected the jury's verdict. Therefore, we find no error as to these comments.

Schlottmann next challenges the following comments made by the prosecutor:

> Now let's talk about circumstantial evidence. The best evidence that we have is that we already know what they are. They're burglars and thieves. How do we know that? Ms. McMason. Eyewitness. Saw them do it. [Defense counsel] says well -- he told you at the beginning of the case, well, she doesn't contest that. Really? If she's not contesting it, why are we here talking about those particular charges? She never pled guilty to those charges. You still have to find her guilty of those charges, don't you? That's one of your jobs. It's what the court has instructed you to do. She didn't take responsibility for it. She's going to try to now --[71]

After a sidebar was held, defense counsel noted his objection for the record.[72] In his rebuttal argument, the prosecutor stated: "Again, Ms. Schlottmann surrounds herself with these things, but she wants to deny all of

---

[69] 3 RP at 432.
[70] See 3 RP at 401, 432.
[71] 3 RP at 400.
[72] 3 RP at 400-01.

them. As I said, she's never taken responsibility for any of it."[73] Defense counsel objected, and the court ordered the prosecutor to proceed.[74] The prosecutor resumed, "She's never taken responsibility for any of these crimes, but for [defense counsel] doing that for her now. But again, she wants to limit what her responsibility is, for obvious reasons."[75]

Schlottmann argues that the prosecutor improperly commented on her constitutional right to plead not guilty, as well as her right against self-incrimination and right to present a defense.

"[T]he State can take no action which will unnecessarily 'chill' or penalize the assertion of a constitutional right and the State may not draw adverse inferences from the exercise of a constitutional right." Gregory, 158 Wn.2d at 806 (quoting State v. Rupe, 101 Wn.2d 664, 705, 683 P.2d 571 (1984)). Specifically, the State may not invite the jury to draw a negative inference from the defendant's exercise of a constitutional right. Gregory, 158 Wn.2d at 806 (citing State v. Jones, 71 Wn. App. 798, 811-12, 863 P.2d 85 (1993)). But "not all arguments touching upon a defendant's constitutional rights are impermissible comments on the exercise of those rights." Gregory, 158 Wn.2d at 806. The question is whether the prosecutor "manifestly intended the remarks to be a comment on that right." State v. Crane, 116 Wn.2d 315, 331, 804 P.2d 10 (1991).

Here, viewing these statements in the context of the entire record, the

---

[73] 3 RP at 433.
[74] 3 RP at 433.
[75] 3 RP at 433.

prosecutor's remarks were not intended to comment on Schlottmann's constitutional rights. Indeed, the comments were invited by defense counsel's opening argument. As previously discussed, defense counsel conceded guilt to the lesser offense of residential burglary, and admitted that the State would be able to prove many of the charges. The prosecutor's comments did not expand beyond the scope of defense counsel's statements. See State v. Dennison, 72 Wn.2d 842, 849, 435 P.2d 526 (1967) (A prosecutor's remarks do not constitute misconduct if they are invited by defense counsel unless they "'go beyond a pertinent reply.'") (quoting State v. LaPorte, 58 Wn.2d 816, 822, 365 P.2d 24 (1961)).

Schlottmann's prosecutorial misconduct claims are not persuasive. The trial court did not abuse its discretion in denying her motion for mistrial.

Affirmed.

_____
Trickey J

WE CONCUR:

_____          _____
Cox J                             Becker, J.